## UNITED STATES v. DEWINSKY et al.
### No. 373.

District Court, D. New Jersey.
Sept. 29, 1941.

Charles M. Phillips, U. S. Atty., of Newark, N. J., and Richard J. Hughes, Asst. U. S. Atty., of Trenton, N. J., for the Government.

Walter G. Winne, of Hackensack, N. J., Harlan Besson, of Hoboken, N. J., and Nathan N. Goldberg, of Clifton, N. J., for defendants.

GOODRICH, Circuit Judge.

I. Defendants, having been convicted of conspiracy, and two of them upon other counts as well, urge several grounds in their motions for a new trial.

The reason most strenuously urged is the trial court's failure to give instruction in the terms asked for concerning the character evidence introduced on behalf of the defendants Quick and Snover. The evidence was introduced in the usual form. The defense seasonably asked the trial court to instruct the jury in the following terms: "It is the right of a person charged with crime to have all the relevant testimony, including that relating to his good character or reputation, considered by the jury in every case, and if, on such consideration, there exists reasonable doubt of his guilt, even though that doubt be engendered merely by his previous good repute, he is entitled to an acquittal. Baker v. State, 53 N.J.L. 45 at page 47 [20 A. 858]; State v. Randall, 95 N.J.L. 452, [113 A. 231]." The court did not charge as requested but referred to the character testimony by saying: "You may consider the character witnesses, what the weight and effect of their testimony is to be, what you want to give it."

The legal question here is a very narrow one. There is no problem of admissibility. Character evidence against a defendant or character evidence for him would be equally relevant in a trial to determine whether he committed a certain offense. The prosecution may not initially attack the defendant's character not because of lack of relevancy of such testimony but because of its prejudicial nature. But the defendant may, as is now well established, offer character testimony in his own behalf. Originally confined to capital cases it was also limited at an early date to doubtful cases. This limitation has long since been obsolete. See 1 Wigmore on Evidence, 3d Ed. 1940, §§ 55, 56. But traces of it may account for some of the misunderstanding as to the extent of the judge's duty to tell the jury when such testimony may be used. Admissibility being established the question arises, what position shall be taken about the weight of such evidence. May it (1) be considered only in a doubtful case; (2) be treated like any other evidence for whatever effect the trier of the fact believes it to be entitled, or (3) is a defendant entitled, as a matter of right, to have it especially emphasized in a charge by the judge to the jury?

Edgington v. United States, 1896, 164 U.S. 361, 366, 17 S.Ct. 72, 74, 41 L.Ed. 467, is the starting point in the discussion of the questions just stated. Mr. Justice Shiras points out in that case that the trial judge had charged the jury that evidence of good character could be considered only if the rest of the evidence created a doubt of the defendant's guilt. This the court said was incorrect and in so holding remarked: " * * * circumstances may be such that an established reputation for

good character, if it is relevant to the issue, would alone create a reasonable doubt, although, without it, the other evidence would be convincing." That decision clearly establishes that character testimony is not to be given a limited effect by the trial court in its instruction to the jury. It certainly does not impose a duty on the trial court to single out this phase of the testimony for special instruction, although the language obviously does say that evidence of good reputation may create a doubt that a person charged with crime committed it. Apart from legal doctrine this is certainly true as a matter of common sense and is the basis for the admission of the evidence in the first instance.

Beyond the rule of law that the effect of the character testimony must not be limited, how far should or must a trial judge go? His task is to give the jury the law applicable to the case. In some courts he is permitted to comment on the testimony; in others he is not. Whether he is or not the purpose of his charge is to give the jury a fair picture in order that they may apply intelligently the law which he states to them to their conclusions about the testimony. The charge should not be a ritual which is correct only if certain words are followed, but should be determined upon the general question of whether it fairly and correctly covers the legal problems of the case.

In this trial as, of course, in many others, there was a large mass of testimony, the hearing of which had occupied two weeks of presentation. Numerous character witnesses had testified. Counsel for defense in summation had emphasized to the jury the importance of this testimony; the government's attorney had commented upon it also, minimizing its importance. The jury were told, with care, about reasonable doubt. Then they were told to consider the character testimony, with the other evidence, without limitation, but without emphasis.

Reasonable doubt in a criminal trial can be created by many things. Among them may be the inherent improbability of the prosecution's case, the apparent truthfulness of the defendant himself or one of his witnesses, the breaking down of some important piece of prosecution testimony by cross-examination, the

otherwise good reputation of the defendant for uprightness. This general proposition is true in this case. Where all the testimony is before the jury and they are directed both on the point of reasonable doubt and to the fact that they shall consider all the testimony, fairness does not require that the trial judge, even upon request, single out one of the elements which may create reasonable doubt and emphasize that to the exclusion of the rest. "Singling out a single matter and emphasizing it by special instruction as often tends to mislead as to guide a jury."[1]

Since the Edgington case, the question of the extent to which the trial judge must go in instructing upon character testimony has been a source of considerable confusion in the decisions. The decisions in the second circuit are very clear. Two opinions by Judge Learned Hand forcefully state that court's understanding of the rule. In United States v. Kelley, 2 Cir., 1939, 105 F.2d 912, 918, complaint had been made of the judge's failure to give "the conventional request regarding the testimony of witnesses to the reputation of the accused". Upon this point the learned judge said:

"Perhaps the judge forgot this request; perhaps he deliberately refused it; at least he said nothing about it. He was right in any event, for he was not required to give it. * * * If a judge undertakes to say anything to the jury about such testimony, he must not tell them to use it only in case the scales are already in balance. If he chooses not to speak of it at all, he is free not to do so, for it is like any other testimony; and whether he shall comment upon it lies wholly within his discretion."

In another decision on the same point the same judge said: "The judge's charge as to the character testimony was only that the jury should consider it along with the rest, remembering that a man with a good reputation might still commit crime; and this is challenged under the doctrine of Edgington v. United States, * * * That case held no more than that a judge should not confine the use of such testimony to the event that the jury was already in doubt. There was nothing revolutionary about that, since if once they reached that point, they ought to acquit in any event.

---

[1] Brewer, J., in Perovich v. United States, 1907, 205 U.S. 86, 92, 27 S.Ct. 456, 458, 51 L.Ed. 722. See, also, Bird v. United States, 1902, 187 U.S. 118, 23 S. Ct. 42, 47 L.Ed. 100.

Although it is perhaps doubtful whether a jury ever in fact concern themselves with such niceties, still it was true that, if understood at all, the charge in that case told them in substance to limit their use of the testimony improperly. But if the judge avoids that pitfall, as here he did, he has as many variants among which to choose as he has in general; evidence of good character is to be used like any other, once it gets before the jury, and the less they are told about the grounds for its admission, or what they shall do with it, the more likely they are to use it sensibly. The subject seems to gather mist which discussion serves only to thicken, and which we can scarcely hope to dissipate by anything further we can add."[2]

No useful purpose is served by a discussion of all the relevant authorities upon the point. There is adequate authority in accord with the cases just quoted from.[3] On the other hand, it is frankly admitted that there are decisions and texts which take the view that the judge must give the more elaborate instruction.[4] Several cases in this circuit leave the matter something less than sun clear. In Cohen v. United States, 3 Cir., 1922, 282 F. 871, 873, Judge Davis said:

"The trial judge was not required to formulate a charge embodying the elaborate discussions upon the subject by reviewing courts—language of a reviewing court and language of a trial court being differently phrased and used for different purposes—but he should have instructed the jury in substance that reputation of the defendant's good character, when put in evidence, is a fact which they should consider with the other facts in the case, and further that reputation for good character is a fact which, when considered in connection with all the other evidence in the case, may, like other facts, generate a reasonable doubt. Edgington v. United States, 164 U.S. 361, 17 S.Ct. 72, 41 L.Ed. 467. * * *"

But in Ridenour v. United States, 3 Cir., 1926, 14 F.2d 888, 892, the court, through the same judge, refused to reverse where the trial judge had told the jury that the character testimony was properly to be considered by them and then continued by saying: "Testimony of good character alone, however, is not sufficient to raise a reasonable doubt in your mind; but, considered in connection with the other testimony in the case, it might be."

This seems to put a narrower limitation upon the testimony than that permitted by the Edgington case. In the still later decision of Pomerantz v. United States, 3 Cir., 1931, 51 F.2d 911, 913, the trial court had charged, with reference to the effect of character testimony, "That's substantive evidence which you can take into consideration with the rest of the defense, and it is entitled to some weight in determining the guilt or innocence of the defendants as to whom it was brought". And further along in the charge, "Character testimony is substantive evidence; and is in itself sufficient to raise a reasonable doubt. That is correct if you feel that it is entitled to that much weight". Judge Davis remarked, "This charge on reputation for good character was, in fact, more favorable to the appellant than he had the right to demand".[5] With such a state of authority the conclusion is that the point is not foreclosed by any decision which this court is obliged to follow.

Because the court feels that the charge was fair in allowing the jury to consider the character testimony, along

[2] Nash v. United States, 2 Cir., 1932, 54 F.2d 1006, 1007.

[3] In addition to the second and third circuits, the following cases represent similar views in other circuits: Grace v. United States, 5 Cir., 1925, 4 F.2d 658; Haffa v. United States, 7 Cir., 1929, 36 F.2d 1; Warren v. United States, 8 Cir., 1918, 250 F. 89; Baugh v. United States, 9 Cir., 1928, 27 F.2d 257. See, also, 1 Wigmore on Evidence, 3d ed. 1940, 452, n. 4.

[4] Hoback v. United States, 4 Cir., 1922, 284 F. 529 (but see the dissenting opinion at page 535); Snitkin v. United States, 7 Cir., 1920, 265 F. 489 (cf. the later case in the same circuit cited in note 3); Miller v. United States, 10 Cir., 1941, 120 F.2d 968. Secondary authority in support of defendants' contention may be found in 1 Blashfield, Instructions to Juries, 2d Ed. 1916, 850 Randall, Instructions to Juries (1922) 405.

[5] He then cites Kaufmann v. United States, 3 Cir., 1922, 282 F. 776, 785, where he had previously held, " * * * the defendant was not entitled to have the judge charge that his good reputation, standing alone, of itself, without regard to the other evidence or circumstances in the case, was sufficient to create reasonable doubt". This would seem to indicate that the first part of the charge quoted above from the Pomerantz case would have sufficed.

with the rest of the case, without emphasis either for or against its weight, the conclusion is that there was no error in the failure to charge as requested.

II. Complaint is made of the failure of the court to charge falsus in uno, falsus in omnibus. This may be coupled in discussion with the alleged error in refusing to charge concerning the weight of testimony of accomplices. These points all relate, it will be seen, to an omission to make comment which the defendant requested upon certain phases of the testimony.

In considering the points it is well to see what the jury were told. They were told several times that the evidence was a matter for them to consider and evaluate. They were directed to give their attention to the evidence as to the issues in the case, which were explained to them and directed not to consider other things than the very ones for which these defendants were on trial. They were told, following argument of counsel, that the courts have said that the testimony of accomplices is to be viewed with suspicion; also that the weight of that testimony was for the jury to consider. Their attention was called to the fact that the testimony was in conflict, "like a head-on collision of a railroad train". They were told that they should consider the motives of the witnesses, all the witnesses, and then determine how far each witness's testimony was to be credited.

It seems to the court that this put to the jury in English all that there is in Latin in the phrase falsus in uno, falsus in omnibus.[6] Of course, it is firmly established that there can be conviction on the testimony of accomplices alone. It is well settled in the federal courts that the whole matter is one for the jury.[7] So is the matter of motives of witnesses in the determination, by the jury, of the probability of truth telling. The court could have enlarged upon the probability of falsification by accomplice witnesses or convict witnesses. It could have enlarged also upon the probability of falsification by a man facing a charge of crime and not yet convicted. It did neither, but told the jury to consider the motives of all the witnesses and to determine in their judgment how much of it to accept and to reject. No error is apparent.

III. Complaint is made about the language in which the presumption of innocence was charged. The court did not give this charge in the language requested by counsel, but the jury were told that every defendant is innocent until proved guilty. The charge was tied up with the argument of counsel to the jury on the point and also correlated with the proposition about reasonable doubt. The presumption is not made any clearer by referring to it in figurative language as a shield, or an armor or a cloak. Presumption is not evidence;[8] it is that which, when applied, amounts to a proof of a matter without evidence. To tell a jury that a man is presumed innocent until he is proved guilty beyond a reasonable doubt is a plain proposition which a jury can understand. Elaboration makes the matter less clear rather than more. And if it is made clear to the jury, it requires no citation of authorities to establish the proposition that instructions to the jury do not have to be made in the language submitted by counsel.

Much of what has been said above applies to a request for a charge about circumstantial evidence. The charge as requested[9] says no more than that for conviction guilt must be established beyond a reasonable doubt. The jury were told that rather elaborately. While there has been no counting of pages of the transcript,

---

[6] And it has been held in this circuit that the trial judge is not required to be any more explicit in his charge. Cohen v. United States, 3 Cir., 1922, 282 F. 871. Professor Wigmore feels very strongly that the maxim is itself of no value at all. 3 Wigmore on Evidence, 3d Ed. 1940, § 1008.

[7] Certainly in the absence of any requested charge concerning the possible necessity of corroboration of such testimony, the trial court need not allude thereto. Holmgren v. United States, 1910, 217 U. S. 509, 30 S.Ct. 588, 54 L.Ed. 861. Nor must the general warning itself, as given here, be given even though counsel asks for it; it is in the discretion of the trial judge. United States v. Becker, 2 Cir., 1933, 62 F.2d 1007.

[8] 9 Wigmore on Evidence, 3d Ed. 1940, § 2511 and n. 4.

[9] "In a case such as this, where the prosecution depends in part upon circumstantial evidence the law requires that each material circumstance be established beyond a reasonable doubt, and the circumstances so established must be consistent only with guilt and be inconsistent with innocence. If the circumstances can be reasonably reconciled with innocence it is the duty of the jury to acquit."

it is the trial court's distinct impression that the great bulk of the testimony in this case was direct testimony and the circumstantial evidence was largely corroborative of that. No reason appears to the court why special emphasis should be laid upon the latter.

■ IV. Defendants complain of the mention by the trial judge that there was a conspiracy and eight defendants had pleaded guilty to it. The mention of these other persons, as will be seen from the language of the charge,[10] was to get them out of the jury's minds and direct the latter's attention to the persons who had stood trial. Several of the defendants who had pleaded guilty had testified. All were identified in court from time to time by various witnesses. The problem for the jury was, of course, not their guilt, but that of those who stood trial.

It seems anomalous that that which was inserted for the defendants' protection should now be made the basis of complaint;

■ V. It is complained both that the verdict was unsupported by the evidence and that it was inconsistent. The first point is not well taken and is almost frivolous. There was ample testimony, if it was believed, to support a conviction. The jury were told that it devolved upon them to decide whether it should be believed. Nor is the verdict of guilty on the conspiracy count as to the defendants, Quick and Snover, inconsistent with the not guilty verdict on the substantive counts. These two defendants were liable on the substantive counts, if at all, by reason of the "aiding and abetting" statute.[11] That statute was read to the jury and explained to them. The jury might well have found, as it did, that while the evidence brought the defendants, Quick and Snover, into a crime looking to the doing of the substantive acts it was not sufficiently strong to establish their participation therein as aiders or abetters. There is ample testimony to support conviction on the conspiracy count alone and it is not inconsistent with reasonable doubt as to the other counts.

■ VI. The final point made is with regard to error in failing either to exclude or to limit the effect of a book of account found in the home of one of the conspirators and identified by two others who were witnesses in the case. The court admitted the book in evidence after proper foundation laid under the Statute of 1936, § 695, 28 U.S.C.A. The language of the statute is very broad and it seems to the court very clearly to require its admission unless there is to be read into the statute an exclusion from application in a criminal case.[12]

■ If the book was admissible in evidence should its probative effect have been limited as requested by counsel?[13] It may be admitted that some state courts under statutes enlarging the common law rule as to books of account have confined the extension pretty narrowly. Such a limitation seems hard to justify under the plain words of the statute and this court takes the position that the statute means what it says.

---

[10] "The Government of the United States has accused fourteen people of crime. Eight of those fourteen people have pleaded guilty. They are out of the case. You don't need to consider them. The fact that they have pleaded guilty does not prove that the people who are left either are guilty or are not guilty; it has nothing to do with it. Just drop those eight out of your mind altogether; you are not concerned with them; you don't have to be concerned with them. Give all your thought to the six people who have pleaded not guilty and whose cases you and I have been listening to for the last two weeks, beginning two weeks ago this Monday afternoon."

And again later on, "I have no doubt that there was a conspiracy here among some people. Eight have pleaded guilty to it. The question you have to face is whether on the testimony in this case these other persons, the six charged and on trial, are also sufficiently tied in by the evidence so that you can say they were participants also."

[11] 18 U.S.C.A. § 550.

[12] Instances of the application of this statute in criminal cases are numerous. A recent example is United States v. Kelley, 2 Cir., 1939, 105 F.2d 912. There is no substance to the contention that there was a violation of defendant Snover's constitutional right of confrontation of witnesses. As the trial judge instructed the jury, the book was not to be used as evidence to establish Snover's entanglement in the conspiracy, but only as evidence of what occurred among the conspirators so found by evidence aliunde.

[13] The request was: "That the entries in the account book admitted in evidence as government's Exhibit G-19 may not be considered by you as evidence of payments of any specified amounts to the defendant, Harry Snover."

It was also contended by the government at the trial that the book was admissible as part of the res gestae. Perhaps it was, for res gestae is a concept which seems capable of almost unlimited expansion.[14] One may suppose that the res here was the conspiracy. Perhaps the recorded account of the "things done" by the conspirators can come in under this head.

In any event, however, it appears that even if the court is wrong in what is said above the error was harmless. Two of the persons who made up the group which kept the book were witnesses at the trial. The witness, Novak, testified at length about the items and was cross-examined concerning them. The same is true of the witness, Dewinsky, in whose handwriting the entries were made. The examination and cross-examination by counsel covered everything of significance found in the book. The jury had nothing from it that it did not have through oral testimony. The force and effect of both were left for them to decide.

Motions for new trial are denied as to all the defendants.

---

[14] See 6 Wigmore on Evidence, 3d Ed. 1940, §§ 1767–1769.