**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Gus SAUNDERS, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Eloise SAUNDERS, Defendant-Appellant.
Nos. 15263, 15264.**

United States Court of Appeals
Sixth Circuit.

Jan. 3, 1964.

Lawrence Gubow, U. S. Atty., Milton J. Trumbauer, Jr., Asst. U. S. Atty., Detroit, Mich., for appellee.

Before O'SULLIVAN, Circuit Judge, KENT, District Judge, and WILSON, District Judge.

FRANK W. WILSON, District Judge.

These cases are before the Court upon appeals by Gus Saunders and Eloise Saunders from convictions for violating the law with regard to the possession and sale of narcotics. The defendants were jointly indicted in a six-count indictment. Counts One and Two charge the defendant Eloise Saunders, individually, with the possession and sale of narcotics, in violation of 21 U.S.C. § 174 and 26 U.S.C. § 4705(a) respectively. Counts Three and Four charge both defendants jointly with possessing and selling narcotics and Counts Five and Six charge the defendant Gus Saunders, individually, with possessing and selling narcotics. Trial by jury was waived by the defendants and the Trial Court found the defendant Eloise Saunders guilty upon Counts One and Two and the defendant Gus Saunders guilty upon Counts Three and Four. A judgment of acquittal was entered as to Eloise Saunders upon Counts Three and Four and as to Gus Saunders upon Counts Five and Six.

The only issues raised upon these appeals are with reference to the sufficiency of evidence to support the judgments of conviction upon each of the respective counts, and the sufficiency of the evidence of possession of narcotics by the defendants to permit the application of any statutory presumption of knowledge of unlawful importation under Counts One and Three respectively.

The judgments of conviction must be upheld if there is substantial evidence to support the findings and judgment of the Trial Court upon viewing the evidence in the light most favorable to the government. American Tobacco Co. v. United States, 147 F.2d 93, (C.C.A. 6), affirmed 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575; Sharp v. United States, 195 F.2d 997 (C.C.A.6); Ross v. United

Milton R. Henry, Pontiac, Mich., for appellants.

States, 197 F.2d 660 (C.C.A.6), cert. denied 344 U.S. 832, 73 S.Ct. 40, 97 L.Ed. 648. The Appellate Court's function in this respect is the same both in cases tried by a jury and those tried by the Court upon waiver of jury trial. Jelaza v. United States, 179 F.2d 202 (C.C.A. 4, 1950).

With respect to the defendant Eloise Saunders, the following matters are established in the testimony. Upon November 9, 1960 at approximately 4:00 p. m., one Therland Crater, a special informant employed by the Bureau of Narcotics, met with agents of the Bureau in the Bureau's office in Detroit, Michigan. After Crater had been searched to verify that he possessed no narcotics, he was provided with $110.00 in identified funds and was then taken to the vicinity of Bethune and Woodward Avenues in Detroit by Agent Lewis and there let out of the government agent's automobile. Other agents and officers were posted for observation in the area. Shortly thereafter Crater was observed to meet the defendant Eloise Saunders in front of a drug store at the corner of Bethune and Woodward. Crater and Eloise Saunders were then observed to walk together for approximately one-half block going east upon Bethune. At that point they disappeared into an alley and were not under observation for approximately one minute or less by agents and officers who testified as witnesses in the trial. Crater and Eloise Saunders were shortly observed to return from the alley and walk a short distance further upon Bethune, when they were picked up by a white Dodge automobile driven by Freddie Saunders, who was identified as the son of Eloise Saunders. The automobile and its three occupants continued under observation for a short distance and then was lost to observation by witnesses for a period of five minutes more or less.

It was again observed in the vicinity of Crater's residence at 82 E. Canfield Street, some mile or more from where Crater and Eloise Saunders had first been observed to enter the car. At this time only Freddie Saunders and Eloise Saunders were observed in the automobile, but shortly thereafter Crater was observed walking down the street toward his residence. He remained under observation, standing alone upon the porch of his residence, except for entering the residence upon one occasion and returning to the porch in approximately one minute. There is testimony in the record from which it may be inferred that he answered a telephone call by an agent at this time and that this was the explanation for his entering the house and returning to the porch. He was picked up by Narcotics Agent Lewis while standing upon the porch of his residence in a matter of approximately five minutes after he had first returned to the residence. At the time he was picked up by Narcotics Agent Lewis he delivered an envelope to him containing powder that was in due course identified as being heroin. The above sequence of events occurred between 4:00 p. m. and 5:10 p. m. upon November 9, 1960.

A further search of Crater at this time revealed that a portion of the identified money given to him was no longer in his possession and that he possessed no other narcotics. All of the above matters were testified to by one or more of the narcotics agents and police officers who constituted the only witnesses in the case. Therland Crater was not available to use as a witness as he was deceased at the time of the trial.[1] From the record in this case all that appears in support of the conviction of Eloise Saunders is that the informer, Therland Crater, was in the presence of Eloise Saunders for a substantial portion of the time between

1. Upon a hearing denying the defendant Gus Saunders bond pending appeal, it appears in the record that the informer, Therland Crater, was murdered prior to the trial of this case under circumstances which led the Trial Court to comment: "I further find that the murder of the

government's chief witness in the prosecution and trial of the indictment on which the Saunders now stand convicted, that the murder of Therland Crater in Toronto in November of 1960 (sic, 1961) had a direct relationship to the prosecution and trial of this case."

the occasion when he was searched and found to have no narcotics in his possession and the time he delivered narcotics to Agent Lewis upon being picked up at his home. He was not in the presence of the defendant Eloise Saunders at all times between these intervals, nor was he in her presence only. Neither was he under observation at all times by witnesses who testified at the trial.

■ The record is completely devoid of any direct testimony that Eloise Saunders ever possessed any narcotics or that she ever sold any narcotics to Therland Crater, nor would the circumstantial evidence against her present anything more than a choice of probabilities. None of the identified currency was traced to her. No passage of anything between Eloise Saunders and Crater was ever observed. No finger print testimony was presented that might link her with the envelope containing heroin. Her presence in the company of Therland Crater, under conditions that may be inferred to be surreptitious, during a substantial portion of the time during which Crater must have acquired the narcotics constitutes the substance of the evidence against her. During this same period of time Crater was observed in the presence of Freddie Saunders. Upon three occasions he was wholly out of observation of any witness, once for approximately one minute when he entered an alleyway with Eloise Saunders, once for approximately five minutes when he was en route from Bethune and Woodward Avenues to his residence at 82 E. Canfield Street, and once for approximately one minute when he entered his residence while awaiting the arrival of Agent Lewis. The unfortunate fate and unavailability of Crater to testify, unexplained and unrelated to this defendant, cannot substitute to provide evidence upon which the guilt of the accused can be inferred. Evidence that at most establishes no more than a choice of reasonable probabilities cannot be said to be sufficiently substantial to sustain a criminal conviction upon appeal. Gulf Refining Co. v. Mark C. Walker & Son, 124 F.2d 420 (C.C.A.6, 1942); Dayton Veneer & Lumber Mills v. Cincinnati, N. O. & T. P. Ry. Co., 132 F.2d 222 (C.C.A.6, 1943).

■ This does not in any way depart from the rule in Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150, relating to circumstantial evidence and requiring that it meet only the standard of establishing guilt beyond a reasonable doubt.

The Trial Court entered a judgment of acquittal as to the defendant Gus Saunders upon Counts Five and Six upon evidence offering a choice of probabilities under testimony that was very similar, if not in some ways stronger, to that upon which a judgment of conviction was entered against Eloise Saunders upon Counts One and Two. The only distinction made by the Court was that the evidence upon Counts Five and Six reflected that Crater, during the time that he acquired the narcotics, was observed jointly in the presence of both Gus Saunders and another party who had a reputation for being a narcotics peddler, whereas under Counts One and Two, while the testimony reflected Crater was jointly in the presence of both Eloise Saunders and Freddie Saunders, it did not reflect anything with regard to Freddie Saunders' reputation.

■ This Court is of the opinion that the evidence with regard to the guilt of Eloise Saunders upon Counts One and Two of the indictment is not sufficiently substantial to sustain the judgment of conviction upon these counts and that the judgment of the Trial Court must therefore be set aside and a judgment of acquittal entered.

■ With regard to the appeal of Gus Saunders, testimony in support of his conviction upon Counts Three and Four reflects a different picture. It reflects that upon November 15, 1960 Crater was again searched by narcotics agents and given recorded funds. Thereupon he was taken by an agent to his residence at 82 E. Canfield Street, where he made a telephone call to Gus Saunders, whose voice was overheard and identified by the

agent, and the matter of "taking care of business" was discussed. After further telephone calls, inferentially involving Eloise Saunders, and while remaining under observation, Crater was taken by the agent to the vicinity of a tavern identified as the "Cotton Club," and there awaited some time until Gus Saunders arrived. Saunders was likewise observed to leave his residence and go to the Cotton Club. An agent within the Cotton Club testified to having observed Gus Saunders deliver a small white packet to Crater and Crater was thereupon observed to hand a roll of money to Saunders. Crater and Saunders departed together and after riding a short distance in Gus Saunders' automobile, under observation at all times, Crater was let out of the automobile and walked across the street and was immediately picked up by a narcotics agent awaiting him. Crater thereupon delivered the white packet to the agent and it was subsequently duly identified as containing heroin. Crater was under effective observation by agents and officers who testified on the trial at all times from the time of his search and the verification that he possessed no narcotics until the time that he delivered the narcotics to the agents after meeting with Gus Saunders. His only contact during this period other than with agents and officers, was with Gus Saunders. The passage from Gus Saunders to Crater of a small white packet similar to the one later delivered to the agent and identified as containing heroin, was directly observed and testified to by an agent, as was the payment of money by Crater to Saunders. The evidence of the guilt of Gus Saunders upon Counts Three and Four is substantial and is clearly sufficient to support a judgment of conviction upon these counts.

■ Likewise, the evidence of possession of narcotics by Gus Saunders is clearly sufficient to support the application of statutory presumption of knowledge upon his part of unlawful importation, as contained in 21 U.S.C. § 174. United States v. Raysor, 294 F.2d 563 (C.C.A.3); United States v. Malfi, 264 F.2d 147 (C.C.A.3); Cellino v. United States, 276 F.2d 941 (C.C.A.9); United States v. Pinna, 229 F.2d 216 (C.C.A.7); United States v. Pisano, 193 F.2d 355, 31 A.L.R.2d 409 (C.C.A.7).

The judgment of conviction of Gus Saunders upon Counts Three and Four will be affirmed. The judgment of conviction of Eloise Saunders upon Counts One and Two will be set aside and a judgment of acquittal entered upon each count. This case will be remanded for the entry of an order accordingly.