Morris G. KAPLAN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 18741.

United States Court of Appeals
Ninth Circuit.

March 13, 1964.

Stanley Fleishman, Los Angeles, Cal.,
for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief Criminal Section, and Jo Ann Dunne, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, HAMLEY and BROWNING, Circuit Judges.

BARNES, Circuit Judge.

Appellant's sole contention is that the evidence is insufficient to sustain his conviction of violating 18 U.S.C. § 1341 (mail fraud). It is unnecessary to recite all testimony before the court, appearing in some 950 pages of testimony. In view of appellant's claim, it should be noted that on this appeal, the evidence does not alone consist of that to which appellant testified, but all the evidence at the trial, considered in the light most favorable to the government, together with the reasonable inferences which may be drawn therefrom. Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Bolen v. United States, 9 Cir. 1962, 303 F.2d 870; Young v. United States, 9 Cir. 1962, 298 F.2d 108, cert. denied 370 U.S. 953, 82 S.Ct. 1602, 8 L.Ed.2d 818 (1962); Benchwick v. United States, 9 Cir. 1961, 297 F.2d 330; Teasley v. United States, 9 Cir. 1961, 292 F.2d 460; Sandez v. United States, 9 Cir. 1956, 239 F.2d 239.

For example, appellant refers in his brief to the government's proof of but thirteen refusals to make refunds involving only $200,[1] while appellant at the same time emphasizes his payment of $17,000 in refunds to show his good faith.[2] This brief totally fails to mention appellant's statement to Postal Inspector Padgett (which we must accept as true in support of the conviction) that appellant had five hundred such requests on hand, totalling $4,000, all of which were unrefunded; and had in the previous sixteen months made refunds in over six hundred other instances.

The question is not whether the appellant refunded ten per cent or four per cent or one per cent, but whether he rep-

1. Appellant's Op. Brief, p. 13.

2. Appellant's Op. Brief, p. 14.

resented he would make refunds in all cases, on request, and then refused to do so, either totally or upon condition of additional payments, and whether this was done as part of a scheme to defraud by use of the mails.

Furthermore, where the sufficiency of the evidence is at issue, circumstantial evidence is not considered inferior to direct evidence in any respect. Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150. Nor was the evidence in this case limited to circumstantial evidence. There was much direct, positive, affirmative testimony in evidence, both oral and written.[3] When the above principles are applied to the facts of this case, we find the following competent evidence was presented at the trial:

Appellant commenced the business operations involved in this case in April 1960, at a time when he was in serious financial difficulty. He ran the business, hired employees, and composed the advertising. The business consisted of mailing out advertising, receiving mail orders from customers, and mailing merchandise to customers. Refunds (and later exchanges) were promised to all who were not completely satisfied. Appellant operated under an arrangement with New York concerns whereby he would receive one-half of the purchase price of merchandise sold, and was required to supply the merchandise, and make refunds of the full purchase price where requested. This arrangement was obviously one that could not be profitable to appellant unless only a relatively small number of refunds were made.

Appellant instructed his employees not to make refunds to the general public, but to make refunds only in response to demands made through the Post Office Department, the Better Business Bureau, or through attorneys. He also said that only those purchasers who wrote threatening letters or put up a "big fuss" were to receive refunds. An unknown number of purchasers never received replies to their demands for refunds. Kaplan had an employee total up the amount of refunds made and then told her she was making too many refunds and not to make any more for awhile. When another employee promised an irate customer that a refund would be made, Kaplan threatened to deduct the refund from the employee's salary if she ever did such a thing again. Once Kaplan dumped into a waste basket certain shoe records containing requests for refunds that had not been made with the remark that "now there won't be any more shoe records left for anyone to check." This occurred a few days after he was interviewed by a postal inspector. Kaplan also mailed to persons requesting refunds a letter stating that due to his company's financial condition he was unable to make full refunds; but would if the customer would pay $2.00 additional. During and after this entire time Kaplan continued to mail out catalogs which carried advertisements guaranteeing that full refunds would be made, or exchanges, upon request. Before Kaplan was informed that the postal inspector was investigating his failure to make refunds as advertised, refunds made by his company varied between one and four per cent of gross sales. After that, they amounted to ten per cent.

About two weeks after appellant was arraigned on the indictment in this case he telephoned a former employee, asked if she had given the District Attorney any information regarding his business, and advised her not to offer more information than she had to. The next day he came to her house and said that she could get a sentence of ten years due to her involvement with his company. He said that she could help by leaving town to avoid service of subpoena, and that if she testified about his throwing out the shoe records she would get into trouble.

---

3. There were 74 exhibits introduced by the government, plus a lengthy stipulation of facts which took 80 pages of transcript to introduce. Appellant introduced 17 documents on his own behalf.

■ These facts, together with others in the case, clearly constitute evidence sufficient to support the trial court's finding based on a logical inference, that appellant specifically intended to and did devise a scheme to defraud, and that he did make false representations concerning refunds, and used the mails to further his scheme.

The action was tried before a capable judge, with long experience at the bar, particularly in criminal matters, and not the slightest objection is or can be raised to the trial court's rulings on evidence, nor his conduct of the trial. It is only his conclusion of guilt that is here attacked; i. e., his conclusion that there was sufficient proof to convict. With that conclusion, we agree.

In appellant's reply brief, he vigorously attacks the testimony of various witnesses relied upon by the prosecution, specifically mentioned and quoted in the government's brief. Such an argument is better made to the trier of facts than to this court on appeal. Three cases are cited to support appellant's viewpoint, in the reply brief.

United States v. Saunders, 6 Cir. 1964, 325 F.2d 840, a narcotics possession and sale case (based on 21 U.S.C. § 174 and 26 U.S.C. § 4705(a)), where the court on the facts there present ruled there was no direct evidence against defendant Saunders, "nor would the circumstantial evidence against her present anything more than a choice of probabilities * * [which] cannot be said to be sufficiently substantial to sustain a criminal conviction upon appeal." The *only* evidence was that she was in the presence of the government's agent during a *portion* of a time during which he acquired narcotics, with marked money, during which time he contacted several other persons.

United States v. Schroeder, 3 Cir. 1963, 325 F.2d 766, an uttering a false application for credit case (18 U.S.C. § 1010), where the court, *with no discussion of the facts,* merely held the guilt of defendant was not established beyond a reasonable doubt; that the verdict was pure "conjecture."

Karn v. United States, 9 Cir. 1946, 158 F.2d 568, a charge of larceny, where under Alaskan statutes this court found no "competent and substantial" evidence to convict, and so reversed. In doing so, it followed the old rule that in order to convict, inferences that may be drawn from circumstantial evidence

"* * * must not only be consistent with a defendant's guilt, but inconsistent with every reasonable hypothesis of innocence. The evidence should be required to point so surely and unerringly to the guilt of the accused as to exclude every reasonable hypothesis but that of guilt."

■ These are brave words, but do not represent the present law. As we have frequently and recently pointed out in Byrnes v. United States, 9 Cir., 327 F.2d 825, note 5a, and Woxberg v. United States, 9 Cir., 329 F.2d 284 (No. 18805, decided Mar. 12, 1964), this rule was disapproved by the United States Supreme Court in Holland v. United States, supra, 348 U.S. pp. 139–140, 75 S.Ct. p. 137, 99 L.Ed. 150. Cf. also Remmer v. United States, 9 Cir. 1953, 205 F.2d 277, 278, reversed on other grounds, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 and many other recent cases from this Circuit. The view urged upon us is not the law. The current correct test is whether "reasonable minds could find that the evidence excludes every hypothesis but that of guilt."

We conclude they here could. We find none of the three cases cited by appellant controlling, nor even applicable to the facts before the trial judge in this case. The judgment of conviction is affirmed.