Commonwealth *v.* Williams, Appellant.

Argued November 11, 1971.   Before JONES, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*John W. Packel*, Assistant Defender, with him *Vincent J. Ziccardi*, Defender, for appellant.

*James T. Ranney*, Assistant District Attorney, with him *Milton M. Stein*, Assistant District Attorney, *James D. Crawford*, Deputy District Attorney, *Richard A. Sprague*, First Assistant District Attorney, and *Arlen Specter*, District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, April 20, 1972:

Indicted for assault and battery with intent to murder, aggravated robbery and conspiracy, the appellant was jointly tried with his co-defendant before a judge sitting without a jury. Found guilty of all charges by the Philadelphia Court of Common Pleas, Trial Division, Criminal Section, he was sentenced after disposition of post-trial motions. An appeal to the Superior Court resulted in a unanimous per curiam affirmance. *Com. v. Williams*, 217 Pa. Superior Ct. 776, 268 A. 2d 181 (1970). We granted allocatur.

Appellant's sole contention is that the evidence was insufficient to support his convictions. "[I]n determining if the evidence was sufficient to sustain the conviction, the test is, whether accepting as true all of the evidence (be it direct or circumstantial) and all rea-

sonable inferences arising therefrom, upon which the jury, or the trial court in a nonjury trial, could properly have reached its verdict, is it sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime of which he has been convicted. [Citation omitted]." *Com. v. Wrona,* 442 Pa. 201, 204, 275 A. 2d 78, 79-80 (1971). Of course, the record in the instant appeal must be considered and read in the light most favorable to the Commonwealth. *E.g., Com. v. Rankin,* 441 Pa. 401, 272 A. 2d 886 (1971).

On these facts we need only consider the testimony of one victim, Grady Dews. Mr. Dews testified that appellant knocked down a Joe Freeman and stood over Freeman while the co-defendant took Freeman's wallet. Dews further testified that when he attempted to help Freeman, he was kicked in the face by the appellant and stabbed by the co-defendant. Notwithstanding the discrepancies in Dews' testimony and the dissimilarity between Dews' testimony and that of the other witnesses, the trier of fact may believe all, a part, or none of the testimony of any witness for the Commonwealth or defense. *E.g., Com. v. Hornberger,* 441 Pa. 57, 270 A. 2d 195 (1970).

The circumstances of Dews' identification of appellant and the testimony of the other witnesses affect the credibility of Dews and the weight to be given to his testimony. These matters were considered by the trial judge who saw and heard the witnesses. Since an appellate court cannot adequately assess a witness' credibility from a cold record, we have erected a standard of review whereby we accept as true all evidence favorable to the verdict winner. Accepting Dews' testimony as true, appellant's convictions must be affirmed. The reasonable doubt which will prevent conviction must be the fact finder's doubt and not that of an appellate court. *United States v. Stirone,* 311 F. 2d 277 (3d Cir. 1962), *cert. denied,* 372 U.S. 935 (1963).

The order of the Superior Court and the judgment of sentence of the Philadelphia Court of Common Pleas are affirmed.

Former Mr. Chief Justice BELL and former Mr. Justice BARBIERI took no part in the consideration or decision of this case.

———

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

On almost nonexistent evidence the majority sustains the judgment of sentence imposed on defendant Edward Williams after he was convicted on charges of aggravated robbery, assault and battery with intent to murder, and conspiracy. I must dissent.

The evidence adduced at defendant's nonjury trial consisted of the following. The Commonwealth's first witness was one Grady Dews. He identified defendant Williams and co-defendant Walker as the two assailants who attacked him and one Joe Freeman, taking Freeman's wallet and stabbing Dews. Dews admitted that he had been drinking before the alleged attack, and further testified that although he personally knew defendant Williams *before* the incident in question, he was *unable* to identify Williams as one of the assailants when the police brought Williams before him in a one-on-one confrontation shortly after the attack. Dews explained this inconsistency as the result of his having viewed Williams while "laying [sic] flat on my stomach" in the hospital.

The Commonwealth's second witness, Mr. Hinton Geary, testified that he observed the entire episode. He stated that he saw co-defendant Walker actually stab Dews, but he insisted that defendant Williams did not participate in the attack and in fact was at least twenty-five feet away talking to a bystander.

Detective Woolfolk, appearing on behalf of the Commonwealth, testified that the morning after the

alleged robbery and assault he interviewed Mr. Dews who at that time told him that he would be unable to identify his assailants. The detective stated that still later on the day after the attack he brought defendant Williams before Dews while the latter was in the hospital and Dews was unable to identify Williams as his assailant. According to the detective, it was not until the preliminary hearing that Dews for the first time identified Williams as one of his attackers.

Defendant Williams denied any participation in the alleged attack and his uncle corroborated his alibi. Co-defendant Walker admitted his role in the attack but *specifically denied* that Williams had any role whatsoever. The second individual allegedly robbed and assaulted, Mr. Freeman, did not appear as a witness.

In reviewing a criminal conviction we must not forget the privileged position that the standard of beyond a reasonable doubt enjoys in our system of criminal justice: "The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence— that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.'" *In Re Winship,* 397 U.S. 358, 363, 90 S. Ct. 1068, 1072 (1970) (citations omitted).

As to what precisely constitutes a "reasonable doubt", it is instructive to consider the language of Third Circuit Court of Appeals Judge GOODRICH: "Reasonable doubt in a criminal trial can be created by many things. Among them may be the inherent improbability of the prosecution's case, *the apparent truthfulness of the defendant himself or one of his*

*witnesses, the breaking down of some important piece of prosecution testimony by cross-examination,* the otherwise good reputation of the defendant for uprightness." *United States v. Dewinsky,* 41 F. Supp. 149, 152 (D.N.J. 1941) (emphasis added).

As the majority opinion correctly points out, the reasonable doubt standard is applied by the finder of fact, not by a reviewing court. Where the majority falls into error in this case, however, is in its assumption that *any* evidence, however tenuous or unreliable, is sufficient to support a criminal conviction. Such a formulation of this Court's scope of review represents a significant and unacceptable departure from our decisional law.

In *Commonwealth v. Young,* 446 Pa. 122, 285 A. 2d 499 (1972), we held the appropriate test for determining the sufficiency of the evidence in a criminal prosecution to be: "We must determine whether a finder of fact could reasonably have found that all of the elements of the crime had been proven beyond a reasonable doubt." Id. at 123, 285 A. 2d at 500. To correctly apply this test we noted that it was necessary to "review the entire record, viewing the evidence in the light most favorable to the Commonwealth." Id. see also *Johnson Appeal,* 445 Pa. 270, 284 A. 2d 780 (1971); *Commonwealth v. Lawrence,* 428 Pa. 188, 189, 236 A. 2d 768, 769 (1968); Act of June 15, 1951, P. L. 585, 19 P.S. §871. That formulation of the test for sufficiency of the evidence is in accord with the prevailing test in the federal courts: "Whether reasonable minds could find that the evidence excludes every hypothesis but that of guilt." *Kaplan v. United States,* 329 F. 2d 561, 563 (9th Cir. 1964); accord *Barnard v. United States,* 342 F. 2d 309 (9th Cir. 1965), cert. denied, 382 U.S. 948, 86 S. Ct. 403 (1966); *Thomas v. United States,* 369 F. 2d 372 (9th Cir. 1966). See also *People*

*v. Hall,* 62 C. 2d 104, 112, 41 Cal. Rptr. 284, 289, 396
P. 2d 700, 705, where Chief Justice TRAYNOR observed:
"To justify a criminal conviction, the trier of fact
must be reasonably persuaded to a near certainty. The
trier must therefore have reasonably rejected all that
undermines confidence."

Even applying the test the majority uses here and
focusing only on the Commonwealth's evidence, it
clearly "cannot be said to be sufficiently substantial
to sustain a criminal conviction upon appeal." *United
States v. Saunders,* 325 F. 2d 840, 843 (6th Cir. 1964).
The Commonwealth's case consists exclusively of the
testimony of an individual who, between his initial con-
frontation with the defendant after the incident and
the preliminary hearing, "changed positions as nimbly
as if dancing a quadrille." *Orloff v. Willoughby,* 345
U.S. 83, 87, 73 S. Ct. 534, 537 (1953) (Justice JACK-
SON). Indeed Dews' testimony was severely impeached
by his admission that he had been drinking before the
incident, and by his in-court testimony that, although
he personally knew the defendant, he was unable to
identify him as his assailant when he viewed him on
the day after the assault. Dews' testimony that he was
unable to identify defendant was corroborated by the
testimony of a police detective who, testifying on be-
half of the Commonwealth, stated without contradic-
tion that Dews told him immediately after the incident
that he would be unable to identify his assailant. The
Commonwealth's final witness, a disinterested individu-
al who was an eyewitness to the entire episode, testi-
fied unequivocally that Williams was definitely not in-
volved in the attack.

Reviewing only the prosecution's evidence it must
be concluded that Dews' testimony was severely im-
peached by his own admissions and completely under-
mined by the Commonwealth's subsequent witness, Po-
lice Detective Woolfolk, on the crucial matter of iden-

tification. The Commonwealth's effort to link this defendant to the crime again failed when another Commonwealth witness, an eyewitness to the crime, testified unequivocally that defendant did not commit the offense. The inherent improbability of the prosecutor's case is here clearly demonstrated by the Commonwealth's own witnesses. Obviously therefore the Commonwealth has fallen far short of providing evidence upon which the fact finder could promptly make a finding of guilt beyond a reasonable doubt.

Here, as in *Kaplan,* supra, the Commonwealth's case was clearly not sufficient for "reasonable minds" to find "that the evidence excludes every hypothesis but that of guilt."

I can see no other conclusion than that the judgment of sentence should be reversed. I therefore dissent.