359 A.2d 811

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Richard Keith REILAND, Appellant.**

Superior Court of Pennsylvania.

June 28, 1976.

110

John J. Dean, Pittsburgh, for appellant.

John J. Hickton, Dist. Atty., Robert L. Eberhardt, Asst. Dist. Atty., Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

Appellant was arrested and indicted on charges of burglary, larceny, receiving stolen goods and corrupting the morals of a minor. A suppression hearing was held on April 29, 1971 and appellant's motions to suppress were denied. On July 7, 1971 appellant pleaded guilty to the above charges and was sentenced to two consecutive prison terms of two to four years each. On May 17, 1972 appellant filed a petition pursuant to the Post Conviction Hearing Act [1] which was dismissed without a hearing. On January 3, 1973 an appeal concerning the dismissal of the PCHA petition was filed with this court. On March 30, 1973 a petition was also filed with this court asking that the case be remanded for an evidentiary hearing. The petition was granted *per curiam* on April 3, 1973 and, on July 24, 1974, after the evidentiary hearing on the PCHA petition, appellant was given the right to file post-verdict motions *nunc pro tunc*. Such post-verdict motions were filed on July 29, 1974, amended on

---

[1] Act of January 25, 1966, P.L. (1965) 1580, 19 P.S. § 1180–1 *et seq.* Hereinafter referred to as PCHA.

September 30, 1974 and denied on July 3, 1975. It is from the denial of the post-verdict motions which appellant now appeals to this court.

Appellant contends on this appeal that his guilty plea was not voluntarily entered because it was motivated by the existence of incriminating evidence obtained by the police in violation of his constitutional rights. Our Supreme Court has held that in order to collaterally attack a guilty plea on such grounds appellant must demonstrate:

> "(1) an involuntary pretrial confession (or presumably any other constitutionally infirm incriminating evidence); (2) that the guilty plea was primarily motivated by such evidence; and (3) that defendant was incompetently advised by counsel to plead guilty, in the circumstances, rather than stand trial." *Commonwealth v. Marsh*, 440 Pa. 590, 593, 271 A.2d 481, 483 (1970).[2]

Accordingly, we must now look to the evidence which appellant contends was obtained in violation of his constitutional rights and which, he claims, motivated his guilty plea.

## I. *The Confession*

██ First to be considered is a confession made by appellant on the day of his arrest. Appellant does not contend that the confession was involuntary, but contends that it is nevertheless inadmissible due to a violation of the mandates contained in *Miranda v. Arizona,*

2. See also *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Commonwealth v. Marsh*, 460 Pa. 253, 333 A.2d 181 (1975); *Commonwealth v. Velez*, 455 Pa. 434, 317 A.2d 252 (1974); *Commonwealth v. Tolbert*, 450 Pa. 149, 299 A.2d 252 (1973); *Commonwealth v. Taylor*, 449 Pa. 345, 296 A.2d 823 (1972); *Commonwealth v. Reagen*, 447 Pa. 186, 290 A.2d 241 (1972); *Commonwealth v. Moroz*, 444 Pa. 493, 281 A.2d 842 (1971); and *Commonwealth v. Brown*, 443 Pa. 22, 275 A.2d 332 (1970).

384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The confession was first attacked by a pre-trial motion to suppress. After a hearing the suppression court found the confession was properly obtained and admissible at trial. Appellant contends that the confession was taken in the absence of counsel after he had requested counsel. If this allegation is true then the confession clearly should have been suppressed. *Miranda v. Arizona,* supra at 474, 86 S.Ct. 1602. Accord: *Michigan v. Mosley,* 423 U.S. 96, 101, 96 S.Ct. 321, 325, n. 7, 46 L.Ed.2d 313, 320, n. 7 (1975). Appellant supports his allegation that he requested counsel prior to giving his confession solely on the basis of the testimony of Officer Detrichko given at the suppression hearing. Officer Detrichko testified that after arresting appellant at his home, he read him his Miranda rights and asked if he wanted to talk. The officer testified as to appellant's response as follows:

> "Well, he sort of like he didn't want to say anything, like he did, but not right there . . . Yes and no, that's the only answer I can really give you."

Solely on the basis of this testimony appellant concludes that he requested an attorney. We do not find this equivocal statement made by appellant as to whether he wished to talk, equivalent to a request for counsel. Accordingly, we find no merit in appellant's contention that he requested counsel prior to giving his confession.

However, appellant's equivocation about his willingness to talk does nevertheless, in itself, raise the issue of whether a confession taken after one expresses a desire to remain silent is admissible. This issue was recently discussed by the United States Supreme Court in the case of *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). In that case the court was faced with a situation where a defendant had exercised his right to remain silent and then, during a later period of interrogation, gave a statement. The question was

whether a resumption of questioning is permissible after a defendant indicates that he wishes to remain silent. In *Miranda*, supra, the court held: "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." 384 U.S. at 473–474, 86 S.Ct. at 1627. But the question of whether, and under what circumstances, a resumption of questioning would be permissible remained unanswered. The court in *Mosley*, supra, after looking at various alternatives, concluded that "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" 423 U.S. at 104, 96 S.Ct. at 326, 46 L.Ed.2d at 321.

In the instant case we conclude, applying this test, that appellant's "right to cut off questioning was scrupulously honored" and, accordingly, the confession in question was properly deemed admissible. After appellant expressed, at the time of his arrest at his home, equivocation as to his willingness to talk, no further questions were asked and appellant was transported to the police station. There appellant was turned over by the arresting officer to other officers. Those officers again gave appellant *Miranda* warnings several times and appellant read and signed a waiver of rights statement. Subsequently he proceeded to relate how he burglardized the Mohawk Lounge and the adjacent service station. After the statement was reduced to writing appellant also read and signed it. Subsequent to the signing of this confession a recording was taken for investigative purposes. Here again appellant was advised of his *Miranda* rights. Assuming appellant's initial equivocation at the time of his arrest to be a desire to remain silent, his subsequent confession was nevertheless admissible pursuant to the standards set forth in *Mosley*, supra.

## II. *The Search*

 Appellant also contends that his guilty plea was motivated by physical evidence seized during a warrantless search of his bedroom. The search took place subsequent to appellant's arrest when officers returned to appellant's home and were admitted by appellant's mother. Appellant claims the search was illegal because his mother's consent was neither voluntary nor authorized. The question of voluntariness can be simply resolved by looking to the following testimony given at the suppression hearing by one of the officers who conducted the search:

> "I told her I had received a call from the owner of the Mohawk Lounge and the prime reason for my being in the home was the recovery of these tapes, which I knew little or nothing about, and would she allow me to look into the bedroom of the Reiland boy, and she said, 'Well, if they are here, I'd rather they were out of here,' and I said to her, 'Well, you know I have no warrant and this will have to be with your permission,' and she gave me permission to search the bedroom of the Reiland boy."

Accepting the officer's version of the search as true [3] the mother's consent was clearly voluntary.

 The question of whether the mother had authority to consent to the search is also easily resolved. As Professor LaFave stated: "If a child is living at the home of his parents, the courts are in agreement that the head of the household may give consent to a search of the child's living quarters." LaFave, Search and Seizure: "The Course of True Law . . . Has Not . . . Run Smooth," 1966 U.Ill.L.F. 255, 318. See also 31 A. L.R.2d 1078, 1081–84 (1953). There are, of course, ex-

---

3. Which we are bound to do. See *Commonwealth v. Williams*, 447 Pa. 206, 208, 290 A.2d 111 (1972).

ceptions to this general rule, such as *People v. Nunn*, 55 Ill.2d 344, 304 N.E.2d 81 (1973) where it was found that a child living in his mother's home had a reasonable expectation of privacy in the quarters which were searched. In *Nunn*, supra, the son locked the bedroom and adjoining kitchenette and told his mother not to enter and not to allow anyone else to enter. The mother agreed to this arrangement and set aside the locked rooms for her son's exclusive use. The facts do not demonstrate that the instant case falls within the exception, so that it is governed by the general rule as set forth by Professor La-Fave.

Since appellant has not satisfied the first prerequisite for a successful collateral attack of a guilty plea as set forth in *Commonwealth v. Marsh*, supra in that he has failed to show any incriminating evidence obtained in violation of his constitutional rights, we need not consider the remaining two requirements. Accordingly we find appellant's plea was voluntarily entered.

Affirmed.

SPAETH, J., files a concurring opinion.

SPAETH, Judge (concurring):

I agree with the majority that appellant's confession was properly obtained. I disagree, however, with the majority's reliance on *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), which I do not consider apposite. In my view we need rely only on *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Appellant was arrested at his home at approximately 4:05 a. m. on January 25, 1971. The arresting officers first informed appellant that they had a warrant for his arrest on burglary charges. Then one of the officers read appellant his *Miranda* warnings from a card and asked his usual follow-up question: "Do you understand these rights I have explained to you, and having these

rights in mind, do you wish to talk to us now?" The officers did not interrogate appellant, nor did appellant volunteer any information. According to one officer, appellant "was sort of like he didn't want to say anything and like he did, but not right there." The officers immediately took appellant to the police station and at approximately 4:25 a. m. turned him over to the station officers.

The station officers read appellant his rights again, and also read him a waiver form. Then they gave the form to appellant to read for himself, and after reading it appellant signed it. Immediately thereafter, at approximately 4:45 a. m., appellant gave a statement admitting his participation in the burglaries. Appellant never requested an attorney.[1]

Appellant claims that since he initially declined to talk to the police at his home, the station police had no right to interrogate him. In support of this claim he cites *Miranda*.

It is true that *Miranda* states:

Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. 384 U.S. 473–474, 86 S.Ct. 1628.

I do not think, however, that the initial encounter between appellant and the arresting officers constituted

1. Although appellant states in his brief that he did request an attorney, there is no evidence of this in the record.

the sort of "in-custody interrogation" that *Miranda* contemplates. The arresting officers' primary responsibility was to serve the arrest warrant and take appellant to the station, where investigating officers would conduct the interrogation. The *Miranda* warnings that the arresting officer gave appellant were not a preliminary to interrogation so much as a prophylactic measure to prevent later exclusion of any statements appellant might make in his excitement. Although appellant was certainly "in custody" from the moment of his arrest, the interrogation proper did not begin until he arrived at the station house.[2]

*Miranda* provides that after the warnings have been given, "the individual may knowingly and intelligently waive these rights and agree to answer questions and make a statement." 384 U.S. 479, 86 S.Ct. 1630. "An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver." 384 U.S. 475, 86 S.Ct. 1628. The burden is upon the government, however, to demonstrate the waiver. *Id.* Here appellant was read a waiver form, read it himself, signed it, and gave a statement, all within minutes of his arrival at the station, and no more than approximately 40 minutes after his arrest. In my view, by proving these facts the government met its burden of demonstrating that there was no physical or psychological coercion, and that appellant understood what his rights were and voluntarily relinquished them.

There are several reasons why I disagree with the majority's reliance on the statement in *Michigan v. Mosley, supra,* that "the admissibility of statements obtained after the person in custody has decided to remain silent

---

**2.** This is not to say that there is never on-the-scene "in-custody interrogation." There often is. Where there is, and where the individual exercises his right to remain silent, a renewal of the warnings at the station will not permit a renewal of questioning.

depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.' " 423 U.S. at 104, 96 S.Ct. at 326, 46 L.Ed.2d at 321.

The facts of *Mosley* are different from the facts of this case. In *Mosley* two distinct crimes were involved. The defendant was arrested for robbery and given his warnings. When he refused to talk, questioning ceased. More than two hours later ("a significant period of time," 423 U.S. at 104, 96 S.Ct. at 326, 46 L.Ed.2d at 322), another police officer gave the defendant his warnings again, and began questioning him about a murder. The defendant then made a statement implicating himself not in the robbery but in the murder. Thus, although the language of *Mosley* sounds applicable to the present case, on its facts it is not; by its citation here the majority has not applied but has extended the holding of *Mosley*.

I regard this extension as quite unnecessary. Not only is the language of *Mosley* broader than required by the facts of the present case, but it is broader than required by the facts of *Mosley* itself; and it is also broader than any test used by the Pennsylvania Supreme Court in *Mosley*-type circumstances. *See, e. g., Commonwealth v. Grandison*, 449 Pa. 231, 296 A.2d 730 (1972) (substantial change in circumstances); *Commonwealth v. Jefferson*, 445 Pa. 1, 281 A.2d 852 (1971) (changed situation).

The danger inherent in the majority's opinion is that it may be applied in a manner we neither anticipate nor intend. Since a state has the power to require higher standards for police practices under state law than is required by the Federal Constitution,[3] *Michigan v. Mosley, supra* at 111, 119, 96 S.Ct. at 325, 334, 46 L.Ed.2d at 326, 331 (dissenting opinion of Brennan, J.), I think that until a more appropriate case arises we should reserve judgment on whether to adopt the broad language of *Mosley*.

**3.** *See, e. g., Commonwealth v. Triplett*, 462 Pa. 256, 341 A.2d 62 (1975); *Commonwealth v. Campana*, 455 Pa. 622, 314 A.2d 854, cert. denied, 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974).