365 A.2d 157

In the Interest of Lester GOLDEN.

Appeal of Lester GOLDEN.
In the Interest of Dale HEMMONS.

Appeal of Dale HEMMONS.

Superior Court of Pennsylvania.
Sept. 27, 1976.
Petition for Allowance of Appeal
Denied Feb. 14, 1977.

Calvin S. Drayer, Jr., Asst. Public Defender, Norristown, for appellants.

Milton O. Moss, Dist. Atty., William T. Nicholas, First Asst. Dist. Atty., Stewart J. Greenleaf, Asst. Dist. Atty., Chief, Appeals Div., Norristown, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

These cases involve appeals to our Court from adjudications of delinquency of both appellants based upon their having committed conspiracy, burglary and criminal mischief. The challenge in each case is only to the finding by the hearing judge that the appellants had committed a burglary, not to the other findings.

In Lansdale, Pennsylvania, two companies, the J. W. Rex Company and the Spraonic Company, occupied different parts of the same building. Their quarters were separated by a fire door secured by a chain lock. On or about 6:00 P.M., November 24, 1974, Timmothy Meyers, the Division Superintendent of the Rex Company, receiv-

ed a call from Floyd Hart, the security guard of the company, advising him that there was a malfunction of equipment of the Rex Company. Mr. Meyers went immediately to the plant and he and the guard went inside the building to seek out the malfunctioning equipment. As they were going down the main hallway which led to the vending machine area, they saw several people who, when they saw Mr. Meyers, ran down the hallway into the Spraonic part of the building. Mr. Meyers and Mr. Hart chased and caught two of them, one being Lester Golden, one of the appellants, and the other being one Joseph Malander. The guard called the Lansdale police who arrived on the scene a few minutes later. An inspection of the premises disclosed that there were opened and partially empty beer bottles standing around, the chain lock had been cut through, the food and cigarette machines had been smashed open and there was an open end wrench inside the cigarette machine.

After being properly advised of his rights, Lester Golden disclosed that he, the appellant Dale Hemmons and Joseph and Dominic Malander had driven in Joseph Malander's car to the yard of the Spraonic Company, had entered Spraonic's part of the building, taking with them three (3) quart bottles of beer. They had cut the chain lock which secured the fire door, with an acetylene torch, and made their way into the Rex Company's part of the building. They had started to drink the beer and they had smashed the vending machine and cigarette machine to get access to the contents of the machines.[1] The appellants and their companions admitted that they had entered the building, had cut the chain lock and smashed the vending machines as depicted by Mr. Meyers and Mr. Hart and the Lansdale police officers. Appellants

---

1. There was no evidence that any of the contents of the coin machines had been taken other than sandwiches out of the food vending machine.

claimed that they wanted to find a place to drink beer and wanted to get something to eat.

At the conclusion of the adjudication hearing on December 4, 1974, the hearing judge found the appellants had committed conspiracy, burglary and criminal mischief on November 24, 1974, with respect to the Spraonic Company and the Rex Company Building.[2]

As we stated hereinabove, the challenge to the adjudication of delinquency is solely to the finding that the appellants committed burglary. They claim that the crimes they intended to commit, i. e., criminal mischief with damages less than $500.00 and under age drinking of intoxicants, were summary offenses and that such criminal offenses are not contemplated as crimes within the description of the offense of burglary as defined in the Crimes Code. The Crimes Code defines the offense of burglary as follows: "a person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter." [3]

The definition of a crime is embodied in the Crimes Code itself. The Code expressly tells us that: "An offense defined by this title for which a sentence of death or of *imprisonment* is authorized constitutes a crime." [4] (Emphasis added.) The Crimes Code further tells us that: "A person who has been convicted of a summary offense may be sentenced *to imprisonment* for a term which shall be fixed by the court at not more than 90

2. The record reflects other charges against appellant but these were the subject of other hearings and are not pertinent to this case.

3. Crimes Code, Act of 1972, Dec. 6, No. 334, 18 Pa.C.S. § 3502(a).

4. Crimes Code § 106, *supra.*

days." [5]   (Emphasis added.)   Thus it clearly appears that imprisonment is authorized for a summary offense and the commission of a summary offense constitutes a crime under our Crimes Code.

The Minority of our Court would have us interpret the Crimes Code in such a way that the word "crime" does not encompass summary offenses.  To so interpret the Statute would mean that persons could break into one's home or building, vandalize it to the extent of $500.00, leave it and if apprehended could be charged only with a summary offense.  The Minority claims that such an interpretation would further the purposes of the Crimes Code.  Such an interpretation would make it easy for persons to break into buildings and do substantial damage inside of them.  We believe that the Legislature never intended such a result in drafting its definition of burglary and that such an interpretation would not be furthering the purposes of the Crimes Code.[6]

The Minority of the Court further implies that the only summary offense committed by the juveniles in these cases was drinking intoxicants while under the age of 21 years.  Such is far from the case.  Serious criminal mischief [7] was perpetrated in this building by the appellants in addition to the under age drinking.  It is important that we deal with the full facts of a case in rendering our decisions.

■   The Minority of our Court stresses the fact that summary offenses are not listed under the classes of crime as set forth in § 106(b) of the Crimes Code.  Section 106 lists all classes of criminal offenses.  Summary offenses are listed as one of the classes of these offenses.  When used in their general sense, crimes are no different

5.  Crimes Code § 1105, *supra.*

6.  Crimes Code, § 105, *supra.*

7.  It is worthy of note that criminal mischief as a summary offense is still called "criminal" in the Crimes Code.

from criminal offenses. We have held that the word crime includes summary proceedings. In *Commonwealth v. Shields,* 50 Pa.Super. 194 (1912), where the sheriff as keeper of the jail was being prosecuted for allowing an inmate who was confined upon a sentence for a summary conviction to escape, the Statute under which he was charged provided that any sheriff or keeper of any jail "having any offender convicted or accused of any crime in his lawful custody for such crime, shall voluntarily permit or suffer such offender to escape and go at large," the officer so offending shall be guilty of a misdemeanor. The persons permitted to escape had been convicted after a hearing before a justice of the peace and were sentenced to pay a fine of $5.00 *or undergo imprisonment* and in default of payment had been committed to the county jail for five days. In that case, we held *inter alia*: ". . . it involves no wider latitude of construction and no undue expansion of the word 'crime' beyond its recognized meaning to hold, as we do, that, as used in sec. 5 of the act of 1860, it includes not only indictable offenses, offenses at common law which are malum in se, or of a deep and atrocious dye, and offenses to which the appellation 'crime' is specifically attached by statute, but also new offenses created by statute to which a penalty by fine or by fine and alternative imprisonment is attached and for which the offender may be summarily convicted before a justice of the peace in a proceeding in the name of the Commonwealth. . . ." p. 204.

The hearing judge properly found in his adjudication that appellants committed a burglary and the adjudication is affirmed.

HOFFMAN, J., files a concurring opinion.

CERCONE, J., concurs in the result.

JACOBS, J., files a dissenting opinion in which SPAETH, J., joins.

HOFFMAN, Judge (concurring):

Because I believe a complete examination of the statutory history of the Crimes Code [1] mandates the conclusion that a summary offense is a crime, I concur. While I am sympathetic to the result reached by the Dissenting Opinion, I recognize that the classification of crimes is a matter for the legislature.

Our role in construing statutory provisions is well-established: "A court may not alter, under the guise of 'construction', the express language and intent of the Legislature. See e.g., *Commonwealth v. Rieck Investment Corp.*, 419 Pa. 52, 213 A.2d 277 (1965); *Calvert Distillers Corp. v. Board of Finance & Revenue,* 376 Pa. 476, 103 A.2d 668 (1954); *Commonwealth v. One 1939 Cadillac Sedan,* 158 Pa.Super. 392, 45 A.2d 406 (1946). While it is true that penal statutes must be strictly construed, 1 Pa. S. § 1928(b)(1) (Special Pamphlet 1973), the principle of strict construction does not permit a court to delete a clear and specific crime from the criminal code. A statute must be construed, if possible, to give effect to all its provisions, making the entire statute effective and certain. Id. §§ 1921(a), 1922(2); see *Lynch v. Owen J. Roberts School District,* 430 Pa. 461, 244 A.2d 1 (1968); *Whitemarsh Township Authority v. Elwert,* 413 Pa. 329, 196 A.2d 843 (1964); *Sherwood v. Elgart,* 383 Pa. 110, 117 A.2d 899 (1955)." *Commonwealth v. Pope,* 455 Pa. 384, 388–89, 317 A.2d 887, 889 (1974).

To best determine the legislative intent regarding summary offenses, a comparison should be drawn between the Crimes Code as originally proposed and as enacted. An examination of the Proposed Crimes Code for

1. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 101 et seq.

Pennsylvania [2] demonstrates that, as originally drafted, a summary offense was not a crime: "Section 1.07. Classes of Crime. (a) An offense defined by this code for which a sentence of death or of imprisonment is authorized constitutes a crime. The classes of crime are: (1) Murder of the first degree (2) Felony of the first degree (3) Felony of the second degree (4) Felony of the third degree (5) Misdemeanor of the first degree (6) Misdemeanor of the second degree (7) Misdemeanor of the third degree . . . . (K) *an offense defined by this code constitutes a summary offense if:* (1) it is so designated in this code, in a statute other than this code, or (2) *if no other sentence than a fine, or imprisonment in default of payment of fine, or fine and forfeiture or other civil penalty is authorized upon conviction. A summary offense does not constitute a crime and conviction of a summary offense shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense.*" (Emphasis supplied).

As late as 1971, this provision remained in the Crimes Code. See, Proposed Changes in the Criminal Law of Pennsylvania, Report to the Pennsylvania Bar Association House of Delegates, January 26–30, 1971. The Crimes Code as enacted, however, revised this section. While § 106 of the Crimes Code [3] contains the same definition of crime ("[a]n offense defined by this title for which a sentence of death or imprisonment is authorized") and the same enumeration of classes of crimes, the provisions relating to summary offenses were substantially revised: "(c) Summary Offenses. An offense defined by this title constitutes a summary offense if: (1) it is so designated in this title, or in a statute other than this title; or (2) if a person convicted thereof may

2. Proposed Crimes Code for Pennsylvania, Joint State Government Commission (1967).

3. Section 1.07 of the Proposed Crimes Code now corresponds to § 106 of the Crimes Code.

be sentenced to a term of imprisonment, the maximum of which is not more than 90 days."

In amending § 106, the legislature changed the punishment for a summary offense from a fine to a term of imprisonment, and specifically eliminated the provision that "[a] summary offense does not constitute a crime and conviction of a summary offense shall not give rise to any legal disadvantage . . . ." Had the legislature intended only to impose a term of imprisonment and not to include a summary offense within the definition of a "crime", it would not have eliminated this provision. Thus, by authorizing a term of imprisonment for a summary offense, and by continuing to define a "crime" as an offense for which a term of imprisonment is authorized, the legislature clearly intended to identify a summary offense as a "crime".

Finally, Professor Toll supports this reading of the Crimes Code: "Although not listed among the 'classes of crime' listed in subsection (a), summary offenses are nevertheless 'crimes' under the Code, because a 'crime' is defined in subsection (a) as 'an offense defined by this title for which a sentence of death or of imprisonment is authorized.'" Toll, Pennsylvania Crimes Code Annotated, § 1.06 at 23 (1974). Thus, I concur.

JACOBS, Judge (dissenting).

Appellants, both juveniles, were adjudicated delinquent after being found guilty of conspiracy, burglary, and criminal mischief. The evidence, which is not disputed at this time, established that appellants at approximately 6:00 p.m. on November 24, 1974 entered without permission a building used for manufacturing purposes. Within the building, the boys illegally consumed alcoholic beverages and also smashed open a cigarette machine and a vending machine. Appellant Golden who was caught by a guard inside the building implicated appel-

lant Hemmons in the offenses. The lower court, after finding appellants delinquent, placed them on probation with the conditions that each of them would make restitution to the owner of the damaged vending machines in the amount of $107.06, that they would continue their counselling, and that they would each pay court costs in the amount of $35.00.

The only conviction challenged by appellants on appeal is the one for burglary. The lower court found appellants guilty of burglary because they entered the building with the intent to illegally consume alcoholic beverages and commit acts of criminal mischief therein. Consumption of alcoholic beverages by persons under the age of 21 is a summary offense. Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 6308 (1973). Because the amount of damage to the vending machines did not exceed $500.00, the criminal mischief involved also constituted only a summary offense. Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 3304(a)(2). Counsel for appellants argued to the lower court that entry into a building with the mere intent to commit summary offenses therein was not sufficient criminal intent to justify a conviction for burglary under the present Crimes Code. Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 101 et seq. (1973). The lower court ruled against appellants on this issue and the only question raised on appeal is whether entry into a building with the intent to commit a summary offense therein constitutes the offense of burglary.

"Burglary at common law [was] the breaking and entering, in the nighttime, of the dwelling house of another, with intent to commit a felony therein." 2 Wharton's Criminal Law and Procedure 24 (1957). The crime was one quite serious in nature and a convicted burglar could expect to "suffer death, without benefit of clergy." Hackett v. Commonwealth, 15 Pa. 95, 98 (1850). Statutory revisions enlarged the scope of the crime so that un-

der the Penal Code of 1939 [1] "[w]hoever, *at any time,* wilfully and maliciously, [entered] *any building,* with intent to commit any felony therein" was guilty of burglary and subject to a sentence of up to twenty years imprisonment. (Emphasis added.) One commentator writing in 1951 noted: "The gravamen of the crime today is the felonious intent of the burglar, and it is on this factor that is predicated the severity of the crime." Wright, *Statutory Burglary—The Magic of Four Walls and a Roof,* 100 U.Pa.L.Rev. 411, 433 (1951).

The present Crimes Code [2] has again enlarged the concept of burglary in § 3502 which provides: "A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, *with intent to commit a crime therein,* . . ." (Emphasis added.) Burglary under the Crimes Code is classified as a first degree felony for which a sentence of up to twenty years imprisonment may be imposed. Crimes Code, 18 Pa.C.S. § 1103 (1973). We must now decide whether the legislature intended that someone who entered a building with the intent to commit a summary offense would be guilty of burglary. In other words, is a summary offense a crime for that purpose?

It has been observed by one authority that "[i]n view of the fact that theft offenses involving less than $2,000 have now been reduced to misdemeanors [see § 3903 of the Crimes Code], it would not be consistent to confine the definition of burglary to entering a building to commit a felony." Jarvis, Pennsylvania Crimes Code and Criminal Law, Discussion of § 3502 (1974). However, did the legislature intend to punish a person with the crime of burglary, a first degree felony, for merely entering a building to commit a summary offense?

1. Act of June 24, 1939, P.L. 872, § 901, 18 P.S. § 4901 (1963).

2. Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 101 *et seq.* (1973).

Our problem would be simplified if we could limit our research to the definition of "crime" found in § 106(a) of the Crimes Code: "An offense defined by this title for which a sentence of . . . imprisonment is authorized constitutes a crime." Under this definition, a summary offense is a crime because it carries with it a possible 90 day sentence of imprisonment. Therefore, a person who entered a building with the intent to commit a summary offense therein would according to this definition be guilty of burglary. In the same section (§ 106(a) ),[3] however, the Crimes Code next lists the classes of crime. Under § 106(a), the classes of crime include murder (first or second degree), felonies (first, second and third degree), and misdemeanors (first, second and third degree). Summary offenses are *not* listed as a class of crime. In § 106(b), the different degrees of murder, felony, and misdemeanor are defined and classified as *crimes*. Once more, however, summary offenses are excluded from the classification of crimes. In § 106(c) summary offenses are defined as offenses that carry a possible 90 days sentence of imprisonment but *no* mention is made that they are crimes.

It is apparent in § 106 that the general definition of crime is inconsistent with the specific classifications of crimes. Under these circumstances the Statutory Construction Act of 1972[4] is instructive. Section 1933 of that act directs: "Particular controls general. When-

---

3. § 106. Classes of offenses
     (a) General rule.—An offense defined by this title for which a sentence of death or of imprisonment is authorized constitutes a crime. The classes of crime are:
     (1) Murder of the first degree or of the second degree.
     (2) Felony of the first degree.
     (3) Felony of the second degree.
     (4) Felony of the third degree.
     (5) Misdemeanor of the first degree.
     (6) Misdemeanor of the second degree.
     (7) Misdemeanor of the third degree.

4. Act of Nov. 25, 1970, P.L. 707, No. 230, added Dec. 6, 1972, P.L. 1339, No. 290, § 3, 1 Pa.S. § 1501 et seq.

ever a general provision in a statute shall be in conflict with a special provision in the same  . . ., the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, *the special provisions shall prevail* and shall be construed as an exception to the general provision  . . .." (Emphasis added.) According to this rule of construction the specific provision defining classes of crime would prevail over the general definition of crime found in § 106 of the Crimes Code.[5] Another basis for a finding that a summary offense is not a crime is in the definition section (§ 1991) of the Statutory Construction Act of 1972. "Crime" is defined in § 1991 as: "Any indictable offense." A summary offense is not an indictable offense, see Pa.R.Crim.P. 51 et seq., and therefore would not be a crime under the Statutory Construction Act of 1972.

Moreover, throughout the Crimes Code, under the different sections pertaining to homicide, assault, kidnap-

---

5. Why did the legislature draft such a broad definition of "crime" which would include summary offenses but then organize the classes of crime to exclude summary offenses? My research has disclosed that the Crimes Code definition of "crime" (as well as that for burglary) is word for word the same as the definition of "crime" (and burglary) set forth by the Model Penal Code (Proposed Official Draft, 1962) in § 1.04. The Model Penal Code in that same section classifies crimes as felonies, misdemeanors, and petty misdemeanors, all of which carry a term of imprisonment. The Model Penal Code, however, does not have any category called "summary offenses" but instead has a fourth group of offenses called "violations". Model Penal Code, § 1.04(5). A prison sentence may not be imposed for a violation although fine and/or forfeiture may be imposed. *Id.* Therefore, a violation is *not a "crime"* under the Model Penal Code, and an entry into a building to commit a violation would not be burglary. It appears to me that our Legislature adopted the Model Penal Code definition of "crime" but failed to adopt its "violation" category which carries with it no possible imprisonment. Instead, they adopted the "summary offense" category which like a violation is generally a minor offense but the legislature also provided for summary offenses the possibility of minimal imprisonment. This theory would explain the inconsistency of having summary offenses fall under the general definition of "crime" yet not be listed as a class of crime.

ping, sexual offenses, and others the first paragraph of the section, is captioned: "Offense [rather than "crime"] defined." In countless other sections of the Crimes Code the drafters refer to "offenses" rather than "crimes". *See* §§ 102, 103, 108, 109, 110, 111 of the Crimes Code. In some sections reference is made to "crimes", as for example inchoate crimes in §§ 901, 902 and 903 of the Crimes Code. However, in my view this specification was deliberate by the legislature because an inchoate summary offense does not exist. *See* Act of June 24, 1939, P.L. 872, 18 P.S. § 5107 (1963) (criminal attempt defined as attempt to commit felony or misdemeanor). I believe that the legislature in the Crimes Code attempted to organize crimes and summary offenses into two separate classes under the general heading of offenses. The only provision in the Crimes Code that is in opposition to this interpretation is the general definition of "crime" as an offense for which imprisonment is authorized.

The Crimes Code itself has a section on principles of construction which provides, *inter alia:*

§ 105. Principles of Construction

The provisions of this title shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this title and the special purposes of the particular provision involved.

Section 104 of the Crimes Code sets forth several purposes of the act. One of the purposes of the Crimes Code is "[t]o safeguard offenders against excessive, disproportionate or arbitrary punishment." I believe that construing summary offenses as not being crimes would further this purpose. Entry into a building with the intent to engage in underage drinking or minor acts of mischief should not be a first degree felony with a possible term of imprisonment of twenty years. Burglary un-

der the majority's definition of crime becomes an offense with a disproportionate penalty.[6]

It is also a purpose of the Crimes Code "[t]o differentiate on reasonable grounds between serious and minor offenses, and to differentiate among offenders with a view to a just individualization in their treatment." Crimes Code, 18 Pa.C.S. § 104(5) (1973). It is difficult for me to justify placing a person who entered a building with the intent to illegally drink alcoholic beverages or commit some other summary offense in the same category with one who entered the dwelling of another with the intent to murder, rape, or rob. But according to the majority's definition of burglary, both persons are first degree felons.[7]

In conclusion I am convinced that the rules of statutory construction as well as the purposes of the Crimes Code require the courts to distinguish between "crimes" and "summary offenses." I would hold that the entry into a building with the intent to commit a summary offense therein is not burglary. Nevertheless, my holding which would reverse the lower court's finding of burgla-

6. *See* note 7 infra.

7. Unfortunately these lofty purposes of the Crimes Code, to guard against disproportionate punishment and to rationally differentiate between offenders, are stifled by the broad coverage of several of the offenses in the Crimes Code. For example, there is no statutory differentiation in punishment or treatment between one who breaks into a dwelling occupied by people with the intent to commit acts of violence therein and one who breaks into a warehouse to steal a case of beer. Even under my restrictive interpretation of "crime", both acts would constitute burglary because a theft where the amount involved is less than $50.00 is a third degree misdemeanor, which is a crime. Crimes Code, 18 Pa.C.S. § 3903(b)(2) (1973). *See also Commonwealth v. Carter,* 236 Pa.Super. 376, 384 n. 3, 344 A.2d 899, 900 (1975) (dissenting opinion by HOFFMAN, J.). Similarly, it is difficult to justify the legislative decision to make one who steals property of another valued at less than $50.00 guilty of a third degree misdemeanor while at the same time making one who causes loss to another by criminal mischief in the amount of less than $500.00 guilty of only a summary offense. Crimes Code, 18 Pa.C.S. §§ 3304(b), 3903(b)(2) (1973).

ry would not affect the lower court's disposition of the case. Because both appellants were placed on probation and ordered to make restitution only for the acts of criminal mischief which are not now challenged, that disposition would stand. However, I would order appellants' convictions for burglary to be vacated although a conviction against each appellant for criminal trespass (§ 3503 of the Crimes Code), which is the unlawful entry of a building without the intent to commit a "crime" therein and therefore the lesser included offense of burglary, *see* *Commonwealth v. Carter*, 236 Pa.Super. 376, 344 A.2d 899 (1975), would accordingly be entered. *See Commonwealth v. Freeman*, 225 Pa.Super. 396, 313 A.2d 770 (1973).

SPAETH, J., joins in this dissenting opinion.