431 A.2d 1052

**COMMONWEALTH of Pennsylvania**

v.

**Donald KOCH, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1979.

Filed July 2, 1981.

292

---

Dwight L. Danser, Easton, for appellant.

Michael Vedomsky, Assistant District Attorney, Easton, for Commonwealth, appellee.

Before CERCONE, President Judge, and PRICE, SPAETH, HESTER, CAVANAUGH, MONTGOMERY and HOFFMAN, JJ.

CERCONE, President Judge:

■ This is an appeal from a summary conviction for disorderly conduct.[1] Appellant Koch was found guilty by a local district justice who fined him twenty-five dollars plus costs. Mr. Koch appealed this decision to the Court of Common Pleas of Northampton County for a de novo hearing.[2] Following this hearing, the Court of Common Pleas also found Mr. Koch guilty of disorderly conduct and fined him one hundred dollars plus court costs. From this order, the appellant took an appeal to this Court. In a panel decision, we dismissed Mr. Koch's appeal without reaching the merits of the case, finding he had waived all issues on appeal due to his failure to file post-verdict motions in accordance with Pa.R.Crim.P. 1123. After granting Mr. Koch's petition for reargument, this Court, sitting en banc, heard oral argument by counsel for appellant solely on the issue of waiver. With respect to this issue, it is Appellant's contention that Rule 1123 is inapplicable to summary convictions. We do not agree.

Appellant argues that Rule 1123 pertains only to traditional prosecutions for misdemeanors and felonies, and that appeal from a summary conviction is governed exclusively by Pa.R.Crim.P. 67. While it is true that criminal rules 63 through 67 specifically deal with summary convictions, the applicability of these rules is limited to those proceedings which take place before the district magistrate. Rule 67 which establishes the procedure for perfecting an "appeal" to the Court of Common Pleas for a trial de novo is, in reality, a retrial of the case as if the prior summary proceeding had not occurred.[3] At this point, the district justice

1. Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S.A. § 5503(a)(2).

2. This appeal to Common Pleas Court was taken pursuant to Pa.R. Crim.P. 67 governing appeals from summary convictions before District Magistrate.

3. See *Commonwealth v. Carter*, 230 Pa.Super. 401, 326 A.2d 530 (1974); *Commonwealth v. Alton*, 209 Pa.Super. 168, 224 A.2d 792 (1966); *Commonwealth v. Young*, 184 Pa.Super. 658, 135 A.2d 774

level, the very policy underlying the necessity for post-verdict motions is not applicable.[4]

■ Summary violations are by definition, minor offenses, punishable most often, only by fine. They justifiably should be summarily handled and the purpose and goal of the rules governing such proceedings is prompt adjudication before the issuing authority. *Commonwealth v. Wadzinski*, 239 Pa.Super. 76, 361 A.2d 790 (1976). However, once an appeal is taken to the Court of Common Pleas, this goal is clearly abrogated, and thereafter, all general provisions of the criminal rules become applicable to the trial de novo unless specifically made inapplicable.[5] The provisions governing construction and definitions of the rules, set out in Pa.R.Crim.P. Chapter 1, state the following:

> Rule 1(a) These rules shall govern criminal proceedings in all courts including courts not of record.

> Rule 3(g) Criminal proceedings include all actions for the enforcement of the *Penal Laws*.

> Rule 3(k) Penal laws include all statutes and embodiments of the common law which establish, create or define crimes or offenses including any ordinances which may provide for imprisonment upon conviction or upon failure to pay a fine or penalty.

(1957); *Commonwealth v. Miller*, 173 Pa.Super. 168, 96 A.2d 153 (1953).

4. Judicial economy is promoted by allowing the trial court a first opportunity to review and perhaps correct asserted trial errors. Effective appellate review is enhanced by the presentation of only those issues clearly framed in post-trial motions below. The appellate court receives the benefit of the trial court's reasoning on these matters and proper presentation of potential appellate claims at trial engenders a complete record. *Commonwealth v. Kinsey*, 249 Pa.Super. 1, 6, 375 A.2d 727, 729 (1977).

5. Examples of such exclusions can be found in Rules 1100 and 316: Pa.R.Crim.P. 1100 specifically makes the 180 day rule inapplicable to summary proceedings by use of the language: "Trial in a *court case* . . ." (emphasis added). A court case is defined in Rule 3(f) as a case in which one or more of the offenses charged is a misdemeanor, felony or murder of the first or second degree. Rule 316 distinguishes between summary and court case with respect to the assignment of counsel.

The Crimes Code defines a crime as "[a]n offense...for which a sentence of death or of imprisonment is authorized." Crimes Code, 18 Pa.C.S.A. § 106. Since the maximum sentence on a summary offense is ninety days imprisonment under 18 Pa.C.S.A. § 1105, a summary offense is a "crime" under the terms of the Crimes Code, and therefore upon a finding of guilt in a de novo summary proceeding, Rule 1123 is applicable. *See generally In the Interest of Golden*, 243 Pa.Super. 267, 365 A.2d 157 (1976), and *Commonwealth v. Oakes*, 481 Pa. 343, 392 A.2d 1324 (1978).

■ Rule 1123 states that "within ten (10) days after a finding of guilt, the defendant shall have the right to file written motions for a new trial and in arrest of judgment". The purpose of such motions is twofold: (1) to afford the trial court in the first instance, the opportunity to correct asserted trial errors; and (2) to clearly and narrowly frame issues for appellate review. *Commonwealth v. Kinsey*, 249 Pa.Super. 1, 375 A.2d 727 (1977). With respect to this policy, there is no basis from which to draw a distinction between and among appeals taken to our court from felony, misdemeanor or summary convictions.

However, Appellant cannot be completely faulted for his misinterpretation in this instance, as heretofore, no explicit statement was contained within the rules themselves. In fact this ambiguity was recently rectified by a revision to the comments to Rule 1123 enacted April 24, 1981. The last line of the official Comment now reads:

> This rule is intended to require post-verdict motions in the court of common pleas after a finding of guilt at a de novo trial in a summary case.

The necessity of this revision bespeaks the confusion which existed in the minds of the members of the practicing bar as well as the judiciary.[6] As exemplified by the instant case,

---

**6.** 11 Pa. Bulletin, Vol. 11; No. 4; Saturday, January 24, 1981, at p. 401; B. Proposed revision of Pa.R's.Crim.P. 67, 1123 and 1405 Comments:

> (5) A new paragraph would be added to make it clear that post-verdict motions are required in summary cases after conviction de novo trial in the court of common pleas upon appeal for a summa-

many judges who regularly preside over de novo proceedings in summary conviction cases, render verdict and sentence at the same time thereby failing to advise the defendant of his 1123 rights. However, this simultaneous announcement of verdict and sentence is the procedure enunciated in Rule 63(e) and by its terms is applicable only to proceedings before the district magistrate as issuing authority. The issuing authority would then advise the defendant of his right to appeal to common pleas for a trial de novo, and the time within which he must exercise that right. See Rule 63(f).

We appreciate that, in certain cases, the filing of post-verdict motions can further burden the already over-worked judges of the courts of common pleas who handle such "statutory appeals" in terms of judicial time and energy. However, we note that the grant or denial of such motions, by way of order, is sufficient. An opinion in support of that order is not required unless the lower court receives a notice of appeal. See Pa.R.A.P. 1925. Further, Rule 1123(b) provides for the oral disposition of motions at the conclusion of trial with the agreement of the defendant.

It is because of the misconception regarding the applicability of Rule 1123 to the summary proceedings by both appellant and the lower court that we must decline to find a knowing and intelligent waiver by appellant in the instant case for his failure to file post trial motions. *Commonwealth v. Cathey*, 477 Pa. 446, 384 A.2d 589 (1978); *Commonwealth v. Williams*, 459 Pa. 589, 330 A.2d 854 (1975); *Commonwealth v. Schroth*, 458 Pa. 233, 328 A.2d 168 (1975). In the past, there has been some question with regard to this Court's sua sponte review of the record to determine whether the lower court complied with Rule 1123(c). Several cases have held that the absence of a specific allegation by appellant that his waiver was unintelligent or involuntary pre-

ry judgment. There is apparently some confusion around the Commonwealth concerning the applicability of Rule 1123 in this summary case context. To make the post-verdict motions requirement quite clear, the Committee is also proposing the addition of a similar paragraph to the Rule 67 *Comment*.

cludes an independent review of the record. *Commonwealth v. Tegano*, 265 Pa.Super. 453, 402 A.2d 526 (1979); *Commonwealth v. Smith*, 258 Pa.Super. 148, 392 A.2d 727 (1978); *Commonwealth v. Harmon*, 267 Pa.Super. 224, 406 A.2d 775 (1979). However, another line of decisions mitigates the harshness of the automatic waiver rule by reasoning that if the record is devoid of an 1123 colloquy by the lower court then appellant cannot be found to have knowingly waived his rights thereunder. *Commonwealth v. Johnson*, 258 Pa. Super. 214, 392 A.2d 760 (1978); *Commonwealth v. Steffish*, 243 Pa.Super. 309, 365 A.2d 865 (1976). While noting that there still exists a divergence of opinion on this issue, we need not discuss this aspect, since it is evident in the instant case that neither counsel for appellant not the lower court were aware of the relevancy of Rule 1123 to the summary proceedings below. Under these circumstances it would be unconscionable to find that appellant knowingly and intelligently waived his right to file post-verdict motions.[7]

■ Having found no waiver, the usual remedy applied by this court has been to remand for the filing of post-verdict motions. However, based both on the nature of the offense, and the facts and circumstances of this case, a remand, although the preferred procedure, would not be in the interest of judicial economy and expediency. The only issues presented by appellant deal with the sufficiency of the evidence upon which his conviction is based. Since we find this position to have merit, it would be a futile gesture to remand for the filing of specific post-trial motions in this case. The record presently before the court is more than adequate for the disposition of the sufficiency claim.

■ The facts relevant to this issue are as follows: On October 18, 1977, a citation was filed by Officer John Bennick of the Lower Saucon Township Police alleging that appellant Koch had violated section 5503(a)(2) of the Pennsylvania Crimes Code by allowing dogs on his property to

7. We note that the prior panel in this appeal was not presented with the same circumstances dealing with the misinterpretation of the applicability of Rule 1123 upon which we now base our decision.

make an unreasonable amount of noise at approximately 2:25 p.m. on October 13, 1977. The police had been called by a neighbor, Mr. Duh, who owns a farmhouse approximately two or three hundred feet away from the property of Mr. Koch. Mr. Duh testified at trial that he heard barking as early as 6:15 a.m. on October 12, 1977, and that he called the police at approximately 2:00 in the afternoon on that same day. He also testified that on October 13, 1977 the dogs barked continuously from early in the morning until sometime after 11:00 a.m. Although Mr. Duh admitted that there were other dogs in the neighborhood, he insisted that the dogs causing the disturbance belonged to Mr. Koch. Apparently, over the years Mr. Duh had voiced numerous complaints to the Koch family concerning the barking dogs. Mr. and Mrs. Koch operate a state licensed kennel and they testified that they took steps at that time to remedy the problem, but Mr. Duh considered these steps unsatisfactory. He is the only neighbor who has ever voiced a complaint with the Koch family. At trial, another of the Koch's neighbors, Mr. Reiss, testified there were many dogs in the neighborhood all of which he had occasionally heard barking, including those dogs on the Koch property. He further testified, however, that when he heard the Koch's dogs barking, it was never for an extended period of time.

The offense of disorderly conduct is defined under the Crimes Code as follows:

§ 5503.  Disorderly Conduct.

(a) Offense defined.—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S. § 5503(a) (1973).

This statute, by its terms, prohibits "any person from *intentionally* or *recklessly* causing or creating a risk of *public* inconvenience, annoyance or alarm by making unreasonable noise." *Commonwealth v. Mastrangelo*, 489 Pa. 254, 260, 414 A.2d 54 at 57 (1980). In the case at bar, after taking into consideration all of the reasonable inferences upon which the trial court could have reached its verdict, and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we find the evidence insufficient to convict appellant of the crime of disorderly conduct. *Commonwealth v. Williams*, 447 Pa. 206, 290 A.2d 111 (1972); *Commonwealth v. Young*, 233 Pa.Super. 429, 335 A.2d 498 (1975).

"Disorderly conduct caused by loud, boisterous and unseemly [8] noise may occur (1) when the peaceable residents nearby are disturbed, *or* (2) where the public peace is disturbed near any public way or property, *or* (3) whereby the traveling public is annoyed." *Commonwealth v. Weiner*, 230 Pa.Super. 245, 249, 326 A.2d 896 at 897 (1974). In the instant case, the appellant's conduct complained of is that of leaving barking dogs unattended at his licensed kennel for a prolonged period of time while he left his home for unrelated employment. As in the *Weiner* case, we are concerned with the effects of the noise on the "peaceable residents," in the community.

As discussed by Mr. Justice Musmanno in *Commonwealth v. Greene*, 410 Pa. 111, 189 A.2d 141 (1963), not every noise annoying to peaceable residents constitutes disorderly conduct.[9]

---

8. Unseemly noise has been defined as 'not fitting or proper in respect to the conventional standards of organized society, or a legally constituted community.' *Commonwealth v. Greene*, 410 Pa. 111 at 113, 189 A.2d 141 at 143 (1963).

9. Although the *Greene* case was initially decided under the old Crimes Code, the import of this decision has been reaffirmed by later cases dealing with the new code. This case is often cited as the definitive authority on the general rules and guidelines to be followed in an analysis of a disorderly conduct violation. *Commonwealth v.*

In Pennsylvania the crime of disorderly conduct embraces activity which disturbs the peace and dignity of a community. The inebriate who runs pell mell through crowded streets, pushing, elbowing and jostling in such a way that people protest and pursue him vengefully is a candidate for the charge of disorderly conduct. Exploding cannon crackers in the public square in the middle of the night is disorderly conduct. The burning of crosses by persons in grotesque costumes, to the consternation of the population of the community, is disorderly conduct. A fight on a street corner, attracting numerous onlookers with the vociferous taking of sides by the spectators, constitutes disorderly conduct. These are only illustrations chosen at random, of which there might be hundreds.

While noise may break tranquility, upset rest, destroy sleep and fracture serenity, it does not of itself break the public peace, an indispensable feature of the crime of disorderly conduct, when the traveling public is not disturbed. If the production of noise alone made out the crime of disorderly conduct, then the coffers of the Commonwealth and municipalities entitled to monetary returns could be filled with fines assessed and collected from cheering football and basketball fans, riveting hammer operators, gong-clanging street car motormen, airplane pilots, siren-sounding ambulance drivers, missile tester, amusement park devotees, bathroom soloists, fife and drum players, trombone zealots, fireworks enthusiasts, etc.

Based on the above analysis, we do not find the continuous barking of dogs, albeit most annoying, housed in a kennel in a rural community, to be of such a nature as to "break the public peace" or disturb "the peace and dignity of the community" and thereby be the type of conduct contemplated within the purview of the statute calling for the imposition of criminal sanctions. Such conduct is more properly redressable in a civil action for the abatement of a private nuisance. Again, quoting Justice Musmanno, in *Greene*, at 189 A.2d 145:

*Mastrangelo*, 489 Pa. 254, 414 A.2d 54 (1980); *Commonwealth v. Weiner*, 230 Pa.Super. 245, 326 A.2d 896 (1974).

The law properly frowns upon the use of the criminal courts for the application of civil remedies. The branding of any individual with the stigma of crime for a civil fault, if there be one, is an act to be reprobated and condemned...

The crime of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all the irritations which breed in the ferment of a community. It has a specific purpose; it has a definitive objective, it is intended to preserve the public peace; it has thus a limited periphery beyond which the prosecuting authorities have no right to transgress any more than the alleged criminal has the right to operate within its clearly outlined circumference.

Based on the foregoing reasons, the order and judgment of the lower court is reversed.

PRICE, J., files a concurring opinion in which CAVA-NAUGH, J. joins.

PRICE, Judge, concurring:

I fully agree with the majority's conclusion that Pa.R. Crim.P. 1123 is applicable in cases involving summary convictions. I also agree that it would be unjust to penalize this appellant by finding a waiver of his substantive allegations. I do this, however, only in the interest of uniformity in the application of the rules for it is clear that Pa.R. Crim.P. 1123 has always applied to summary convictions. Indeed, many past summary appeals have been placed before us in compliance with Rule 1123 and our decision today fails to recognize that many of our courts of common pleas and members of the bar have always recognized the obvious; that is, the applicability of the rules. I write separately to emphasize several points regarding the impact of today's decision.

By concluding that appellant did not waive his substantive claims notwithstanding his failure to file post-trial motions as required by Rule 1123, our holding that the Rule applies

to summary cases is given purely prospective effect.[1] Accordingly, post-trial motions will be required to preserve issues for appeal in all summary cases in which the de novo trial in the court of common pleas results in a finding of guilt after the date of this decision or July 1, 1981,[2] whichever is earlier. Furthermore, in those appeals now pending in this court involving summary cases in which post-trial motions were not filed, the proper course is to remand to permit the filing of those motions nunc pro tunc.

Finally, I view our decision today as merely an isolated departure from, and not the abandonment of, the settled policy of this court regarding our sua sponte review of issues not properly placed before us. It is clear that, absent a claim that the failure to file specific post-trial motions was involuntary or that the trial court failed to comply with Rule 1123(c),[3] if an appellant has not presented his substantive allegations in compliance with Rule 1123, we will not undertake a sua sponte review of those issues. *Commonwealth v. Harmon*, 267 Pa.Super. 224, 406 A.2d 775 (1979); *Commonwealth v. Tegano*, 265 Pa.Super. 453, 402 A.2d 526 (1979); *Commonwealth v. Smith*, 258 Pa.Super. 148, 392 A.2d 727

---

1. "There is, of course, no obstacle in applying a procedural rule which is not constitutionally based in a manner which is prospective only." *Commonwealth v. Tarver*, 467 Pa. 401, 406, 357 A.2d 539, 542 (1976). *See Commonwealth v. Milliken*, 450 Pa. 310, 300 A.2d 78 (1973); *Commonwealth v. Hynd*, 230 Pa.Super. 114, 326 A.2d 434 (1974). *See also Commonwealth v. Spencer*, 442 Pa. 328, 275 A.2d 299 (1971).

2. July 1, 1981 is the effective date of the revisions to the Comments to Pennsylvania Rules of Criminal Procedure 67 and 1123, which revisions clarify that post-verdict motions are required after a finding of guilt at a de novo trial in a summary case.

3. Upon the finding of guilt, the trial judge shall advise the defendant on the record:
(1) of the right to file post-verdict motions and of the right to the assistance of counsel in the filing of such motions and on appeal of any issues raised therein;
(2) of the time within which he must do so as set forth in paragraph (a); and
(3) that only the grounds contained in such motions may be raised on appeal.
Pa.R.Crim.P. 1123(c).

(1978); *Commonwealth v. Taylor*, 257 Pa.Super. 298, 390 A.2d 831 (1978) (equally divided court); *Commonwealth v. Richter*, 257 Pa.Super. 260, 390 A.2d 812 (1978) (equally divided court). Following our decision today, that policy is of equal application in appeals arising from summary offense convictions.

CAVANAUGH, J., joins.