## Commonwealth ex rel. Capital Tax Collection
## Bureau v. Harden

C.P. of Dauphin County, no. 4051 CD 2001.

*Jodi A. Beierschmitt* and *Dennis Boyle,* for plaintiff.
*Darnell Harden,* pro se.

CLARK, *J.,* December 3, 2002—

## INTRODUCTION

In 1789, Benjamin Franklin wrote "In this world nothing is certain but death and taxes." [1] And now, more than two centuries later, we are called upon to decide whether or not the latter of these unpleasant certainties may be assessed against a citizen, the defendant, Darnell Harden, a/k/a Hadiel T. G. Bey. The instant matter stems from what, upon first impression, might appear to be quite a simple proposition, namely, can the city of Harrisburg compel a resident to file an earned income tax return? However, as will be discussed herein, that proposition, notwithstanding the trappings suggested by the true party

---

1. Benjamin Franklin (1706-1790) in a letter to Jean-Baptiste Leroy, 1789.

in interest, is not what this matter is all about. Rather, it is the usurpation of the mantle of the sovereign, the Commonwealth itself, and an apparent abuse of the criminal justice process that is at the core of this case.

The primary focus of the court's inquiry and discussion is the power and authority, if any, that the city's retained "income tax collection officer" has to initiate and prosecute a private criminal complaint, all in the name of the Commonwealth, in order to extract compliance for an alleged violation of the city's taxing ordinances. More specifically, can the city's tax collector employ criminal law procedures and sanctions, advanced by private persons and entities (who may have serious conflicts of interest in such matters), in an attempt to obtain compliance with the taxing ordinances. And more particularly, can this apparent course of first resort be employed by private persons acting under an assertion of color of state law.

## BACKGROUND

From the scant documents of record in this case, it appears that the defendant was an adult resident of the city during the 1999 calendar year. By virtue of the city's Earned Income and Net Profits Tax Ordinance no. 108, as authorized by the Pennsylvania Earned Income statute, 53 P.S. §6913, the defendant was allegedly obligated to file a return of earned income or net profits on or before April 15, 2000. According to the private criminal complaint filed against the defendant, he (defendant) failed to file such a return within the prescribed time to do so. It does not appear anywhere of record that the city's tax collector attempted to first obtain compliance

with the local tax ordinances through any type of civil proceeding, although expressly authorized by law to do so.

On or about August 15, 2001, a private *criminal* complaint was filed by Ms. Gloria Johnson, denominated as the "deputy earned income tax officer" of the "Capital Tax Collection Bureau" against the defendant, alleging that he (defendant) had violated the provisions of the ordinance. That private criminal complaint was never approved, prior or subsequent to filing, by a Commonwealth attorney. Thereafter, a summary criminal proceeding was conducted before District Justice Joseph S. Solomon, which resulted in the defendant being found guilty of violating the ordinance, and he was assessed a fine and costs in the amount of $540.50. (3/28/2002, N.T. 2.) A timely appeal was filed by the defendant, and the case was thereafter scheduled for a de novo summary trial before this court.

## DISCUSSION

In preparation for hearing this matter as a de novo trial, the court had an opportunity to review the file documents and noted several matters that raised issues of both substantive and procedural concern relating to criminal law and procedure. First, it should be noted that on November 21, 2001, the defendant, pro se, had filed with the court a document which he entitled "petition in error." This petition can best be described as a rambling, rather incoherent attempt to invoke some sort of self-styled collage of disjointed concepts involving constitutional law, common law, and other assorted and sundry notions, all seeming to assert a challenge to the ordinance and its applicability to him, the defendant. Indeed, from read-

ing that petition, it was quite apparent to the court that the defendant had little or no concept of the pertinent issues of the private criminal prosecution that was being hoisted against him, and he was likewise not likely to be able to fairly respond to such situation in any meaningful fashion. This obvious disparity between the prosecution and the defendant served to heighten our concerns about the defendant's ability to adequately defend himself against these allegations.

It is vital to a reasonable discussion of this matter to truly illuminate just who was claiming to be the "Commonwealth" in these *criminal* proceedings. As noted earlier, this prosecution was initiated by a *private* criminal complaint. A passing glance at the title of the employer (Capital Tax Collection Bureau) of the person (Ms. Johnson) who signed the complaint as affiant, and her title (deputy earned income tax officer), might initially convey an impression that this prosecution against the defendant was being instituted and advanced by a public employee who was employed by a governmental entity. However, in reality, nothing could be further from the truth. In fact, the Capital Tax Collection Bureau is a private, non-profit corporation which solicits municipal governments, including school districts, to act as their tax collector, pursuant to the provisions of 53 P.S. §6913. Likewise, the deputy earned income tax officer, Ms. Johnson, the affiant, is a privately employed, civilian employee of that same, non-profit corporation, the bureau.

It would be of some value to initially dispel any suggestion that the city is not authorized to enact a taxing ordinance, such as ordinance no. 108. It is, and has every legal right to levy and collect on earned income and

net profits as established by that statute. Nor is it in dispute that the city can engage the services of a private entity, such as the bureau, to function as the city's tax collector, again pursuant to the provisions of that same statute. What is very much in question in this case is the manner by which *criminal* proceedings were initiated by an affiant of a private, non-profit corporation in an attempt to force a citizen to conform to the dictates of a local ordinance. Although the bureau is duly registered and denominated as a non-profit corporation, reason dictates that it must generate income from its services in order to pay its employees, operating costs, debt service and related expenses. It is also equally reasonable to presume that whatever fee schedule is established between the bureau and its client municipalities, it is, at least in significant part, predicated upon the volume of accounts collected and the resultant tax revenues paid over to its clients. Thus, there is an inherent and unavoidable monetary interest on the part of the bureau to collect as much tax as possible that may be due and owing from each person or entity that is subject to the levy. And therein is sown the makings of mischief.

An examination of the Act (53 P.S. §6913), reveals both the existence and absence of some statutory provisions which shed some light on the intention of the General Assembly when enacting this legislation. For instance, section VII of the Act, subsection (a), specifically authorizes the designated tax collection officer (bureau) to "sue, *in the name of the taxing district,* for recovery of taxes due and unpaid . . . ." 53 P.S. §6913 (VII)(a). (emphasis supplied) It is obvious that the General Assembly wanted to ensure that the municipal tax collector had standing to initiate and pursue a civil remedy on behalf

of its municipal client. The Act also provides that "This section shall not be construed to limit *the governing body* from recovering delinquent taxes by any other means provided by this Act." 53 P.S. §6913 (VII)(b)(5). (emphasis supplied) That section of the Act likewise, and obviously, ensures that any of the other remedies available to a municipal taxing entity, can be pursued by *the municipal entity.* And of final note, is section IX of the Act where there are summary criminal provisions which impose fines, costs, and possible imprisonment, against anyone found guilty of failing to comply with the mandatory provisions of the Act. 53 P.S. §6913(IX)(a-d).

Again, as indicated above, it is undisputed that the General Assembly, in enacting the statute, intended to empower and did empower the tax collector (bureau) to pursue collection of the taxes due and owing to its client municipalities through civil actions at law. However, the attempt to collect those same taxes, by a private corporation, through a private *criminal* complaint, is quite another matter. Nowhere in the Act did the legislature empower a private civilian tax collector to initiate a private *criminal* complaint against a person or entity alleged to be in noncompliance with the ordinance, in contrast to the specific grant of authority to pursue a civil remedy. It is bedrock law in this Commonwealth that the General Assembly is fully presumed to know the meaning and effect of all legislation it enacts. Indeed, if we were to apply the principles of statutory construction, 1 Pa.C.S. §§1901-1939, to this issue, especially in light of a specific grant of authority to the tax collector to pursue *civil* remedies to collect taxes, and the concomitant lack of such a specific grant of authority to that same tax collector to *criminally* pursue such a remedy, we are con-

strained to conclude that the legislature did not intend for private, civilian tax collectors to assume the powers and duties, which are ordinarily and properly reserved to law enforcement agencies, to criminally enforce the provisions of the Act.

It is for these reasons that we find that the criminal law enforcement provisions of the Act should be pursued, if at all, and preferably, by a bona fide law enforcement agency who has criminal law jurisdiction where the violation is alleged to have occurred. In the absence of criminal enforcement action by a bona fide law enforcement officer, and for good cause, the affiant of any such private criminal complaint should be, at an absolute minimum, an actual employee of the municipal taxing entity asserting the levy, which employee is authorized by law to exercise at least quasi-law enforcement authority to enforce such criminal penalty provisions of the Act. However, in any such private criminal prosecution case, the resort to criminal law prosecution and its attendant sanctions should only be pursued after all other less ominous avenues of approach have been reasonably exhausted. It would be wise for these taxing entities to remember that a "debtor's prison" is not permitted in this Commonwealth, or these United States.

This methodology would act as a reasonable check and balance upon the use of criminal law enforcement power to collect what is essentially a public and civil debt allegedly owed to a local governmental agency, and would also assure that the persons bringing the prosecution (law enforcement or quasi-law enforcement officers) do not have a monetary interest in the outcome of that criminal prosecution. Aside from the obvious pub-

lic policy considerations attendant to only allowing law enforcement officers, or where absolutely necessary, quasi-law enforcement officers, to pursue these criminal enforcement provisions, there is also a not insignificant collateral consideration of the possible catastrophic civil liability consequences to a private entity, such as the bureau and its affiant employees, should any such private criminal prosecution prove to be in error, and thereby damage the good name and reputation of an innocent person. The good faith exception from liability accorded to law enforcement personnel and their agencies would most likely be unavailable to private persons and/or entities in such circumstances.

It is quite apparent to this court that the initiation of civil remedies by the tax collector, as specifically provided by law, may not be viewed by some to be the most expedient, productive, profitable or cost efficient method of collecting taxes that may be due. However, allowing a private entity, such as the bureau, which has a patent and vested interest in a successful outcome of such a criminal prosecution, to adopt the role of the Commonwealth in order to advance its tax collection interests, is fraught with the potential for wrongdoing. One need look no deeper than the tumultuous history of this Commonwealth at the later part of the 1800s and the very early 1900s, when the General Assembly commissioned, by statute, the formation of private corporate police forces throughout the state to protect and preserve the private interests of coal barons, iron industrialists, and railroad entrepreneurs. See generally, Act 228 of February 28, 1865, P.L. 225, which was followed shortly by Act 87 of April 11, 1866, P.L. 99. These statutes created the Railroad Police and the infamous "Coal and Iron Police,"

respectively. Although presumably well-intentioned actions by the General Assembly at the time, these commissioned, private police forces soon became a brutal and corrupt scourge upon the citizens and a damning blight upon the name of this Commonwealth. That dark period of our history became a hard-learned lesson to never again allow the criminal law enforcement power of the Commonwealth to be manipulated and wielded by the private sector.

With the foregoing as a backdrop, let us now review the instant case. As stated earlier, it is the court's considered opinion that the civilian tax collector (bureau), by and through its employee (Ms. Johnson), should not have assumed the role of an affiant in a private criminal complaint against the defendant. However, if we assume, arguendo, that such private criminal enforcement action is permitted, then we must examine how the Pennsylvania Rules of Criminal Procedure effect any such prosecution at the different judicial levels.

It is now important to point out that at no stage of these criminal proceedings, either before the district justice or the court of common pleas, did a Commonwealth attorney (district attorney or attorney general) ever appear on behalf of the Commonwealth. It is not clear from the record if any private attorney appeared before the district justice on behalf of the bureau's affiant employee, Ms. Johnson. Although it does appear that the defendant represented himself, pro se, throughout this entire matter. However, on the day of summary trial before this court on March 28, 2002, Jodi A. Beierschmitt, Esquire, a licensed attorney and member of the law firm privately retained by the bureau to represent its corporate inter-

ests, attempted to appear on behalf of the Commonwealth and to assume the role of a prosecutor, thus purporting to represent the Commonwealth's interests in that de novo proceeding. At that time, Attorney Beierschmitt was neither a Commonwealth attorney, nor was she an attorney appearing *on behalf of a municipality,* with the consent of the Commonwealth attorney (Dauphin County District Attorney). Rather, Attorney Beierschmitt was a privately employed, privately retained lawyer from the law firm retained by the bureau. It was quite apparent to this court that Attorney Beierschmitt was attempting to bootstrap the municipal status of the bureau's municipal clients as the basis for her purported appearance on behalf of the Commonwealth. Such twice-removed municipal status certainly does not comport with the laws of this Commonwealth, especially the Rules of Criminal Procedure.

Upon Attorney Beierschmitt's inability to satisfy the basic requirements of standing to bring the prosecution before this court, the charge against the defendant was dismissed, and duly noted on the record. Subsequently, this court received a notice of appeal, filed on June 21, 2002 in the Pennsylvania Commonwealth Court by the bureau's said attorney, again purporting to be acting in the role of the Commonwealth as appellant. Thereafter, pursuant to Pa.R.A.P. 1925(b), this court issued an order upon the appellant (bureau), requiring it to file a concise statement of matters complained of on appeal. On July 22, 2002 the appellant (bureau) filed its statement, which appears to contain a single appeal issue, framed as follows:

"(1) The trial court erred in dismissing the case on the basis that the 'complaint' was not signed by the district attorney's office pursuant to Pennsylvania Rule of Crimi-

nal Procedure, where Rule 506 is not applicable to the matter dismissed, and the appropriately governing rule is instead Pennsylvania Rule of Criminal Procedure 420, which does not require the signature of the attorney for the Commonwealth." Statement of matters complained of on appeal, filed by counsels for the Capital Tax Collection Bureau on July 22, 2002.

It is interesting to note, that the foregoing statement was endorsed by the signatures of Attorney Beierschmitt and another member of her law firm, and specifically stated that they were claiming to be "Counsel for: Capital Tax Collection Bureau." In the brief subsequently filed with the Commonwealth Court in support of its statement, the appellant (bureau) posited its appeal proposition as follows:

"Whether the signature requirement of Pennsylvania Rule of Criminal Procedure 506 is applicable to a summary case where the appropriate rule governing summary cases is instead Pennsylvania Rule of Criminal Procedure 420, which does not require the signature of the attorney for the Commonwealth?"

Brief in support of statement of matters complained of on appeal, 7/22/2002, p. 2.

If we were to agree with the appellant, which we do not, that the pertinent appeal issue is correct as stated above, then we might likewise agree with the appellant's contention stated therein. However, as is being discussed in this writing, that is not the true issue(s) in this case. Notwithstanding that distinction, we will agree with the appellant (bureau) that the approval of the Commonwealth's attorney is not required for a filing and prosecution of a private criminal complaint, which alleges a summary violation of the law, *in a proceeding before a*

*district justice.* (See and contrast the provisions of Rules 506 and 420 of the Pa.R.Crim.P.) We further agree with the appellant (bureau) when it asserts that Rule. 420 of the Pennsylvania Rules of Criminal Procedure provides that in summary cases, when the affiant is not a law enforcement officer, a summary criminal action shall be instituted by filing a complaint with the proper issuing authority. Pa.R.Crim.P. 420, 42 Pa.C.S.

If the prosecution in this case had been initiated either by a law enforcement or quasi-law enforcement officer from the municipal entity which was levying the tax, then there would not be the problems that the current situation presents. And, if a conviction was obtained before the issuing authority and was then subsequently appealed into the court of common pleas, either a Commonwealth attorney (presumably the district attorney) or a duly appointed solicitor for the municipal entity involved in the matter, would appropriately have had standing to present the case on behalf of the Commonwealth to the court for a summary de novo trial. Unfortunately, that is not what happened in this case. It is likewise obvious from a reading of the rules that private summary criminal prosecutions brought before a district justice do not require the approval of a Commonwealth attorney. Rule 506, and its requirement of Commonwealth attorney approval, only applies to court cases, which, by definition, do not include summary offenses. And if this case had not been appealed by the defendant into the court of common pleas, then that would have been the end of it. However, that also is not this case.

As this court clearly summarized during the proceedings held on March 28, 2002, *all* the Rules of Criminal

Procedure governing a trial de novo were applicable once the matter arrived in this court. Our Pennsylvania Superior Court has firmly established that:

"Summary violations are by definition, minor offenses, punishable most often, only by fine. They justifiably should be summarily handled and the purpose and goal of the rules governing such proceedings is prompt adjudication before the issuing authority. However, once an appeal is taken to the court of common pleas, this goal is clearly abrogated, and thereafter *all* general provisions of the criminal rules become applicable to the trial de novo unless specifically made inapplicable." *Commonwealth v. Bernotas,* 399 Pa. Super. 492, 494, 582 A.2d 886, 887-88 (1990) (citing *Commonwealth v. Koch,* 288 Pa. Super. 290, 293, 431 A.2d 1052, 1054 (1981)). (emphasis supplied)

As can be seen by the plain language employed by the Superior Court, above, "*all* general provision of the criminal rules become applicable . . ." when a de novo trial occurs. All means all! We are unaware of any exception which would exclude appeals from private criminal prosecutions under the Act to be rendered inapplicable to the general provisions. That appearing to be the case, then the approval of a Commonwealth attorney is a required condition for prosecution at de novo summary trials before a court of common pleas. Usually such approval is a de facto matter implicit in the case being presented in the court of common pleas on appeal, either by the district attorney, or by a municipal solicitor, with the district attorney's blessing and consent, as specifically provided by the rules.

Furthermore, even if we once again assume, arguendo, that the Commonwealth's actual or implied approval was

not required for this prosecution to proceed before the court of common pleas, it still must fail, since it was not being prosecuted by a Commonwealth attorney; but, rather, was being pursued by a private attorney attempting to invoke the mantle of the Commonwealth on behalf of a private corporate client, the bureau. The law simply does not permit this type of legal conduct, and for good reason. It is also quite interesting to note that nowhere in any of the pleadings, briefs, or other documents filed in this case, is there any assertion, whatsoever, that Attorney Beierschmitt and/or her law firm, had any sort of authorization to pursue this matter as an attorney representing a *municipality,* and with consent of the Dauphin County District Attorney. Pa.R.Crim.P. 462(B).

Of final note is the issue of timeliness of the appeal. As stated above, on March 28, 2002, at the time of the de novo trial of this case, this court clearly stated, on the record, the basis for the dismissal of the case, and clearly and definitively dismissed the case at that time. It was not until June 14, 2002 that counsel for the appellant (bureau) filed a praecipe to enter final order with the clerk of courts. This court executed such an order, *dated March 28, 2002* (the date of final decision), and the same was filed with the clerk of courts on June 17, 2002. Generally, the notice of an appeal "shall be filed within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a). Pursuant to Pa.R.A.P 301(a), an order of the court shall not be appealed until it is entered upon the appropriate docket. And the right to make such an appeal may be taken from a final order. Pa.R.A.P. 341(a). "A final order is any order that: (1) disposes of all claims and of all parties. . . ." Pa.R.A.P 341(b).

During the March 28, 2002 hearing we dismissed the complaint and such dismissal was accordingly docketed. Further, we made it abundantly clear when signing the requested praecipe for final order that it was effective as of March 28, 2002. This court clearly effectuated the dismissal of this action on March 28, 2002 on the record and the docket reflects such dismissal. This court clearly stated at that time: "Case dismissed. You cannot bring this prosecution. You have failed to do what the law requires." (3/28/2002, N.T. 4.) It would appear to this court that the filing of the said praecipe was nothing more than a thinly disguised attempt to enlarge the time for filing a notice of appeal, which time had already elapsed.

Additionally, we question whether or not the Commonwealth Court is the proper forum for this appeal. Given the fact that the true nature of the issues addressed herein are, obviously, the interpretation and application of the criminal laws and the Rules of Criminal Procedure, notwithstanding the fact that these matters arise in the context of a local ordinance tax enforcement case, it would seem that the Pennsylvania Superior Court would be the appropriate forum to decide this case. However, we will let those lofty matters to our superiors on the appellate courts of this Commonwealth to decide.

## CONCLUSION

We certainly understand and appreciate that it is vital to effective and good government that all citizens who are subject to lawful taxes are obligated to pay those taxes to support the government. We are equally cognizant that those citizens that perform the function of tax collection have a generally thankless job, and are often unfairly

criticized, and even abused by the citizens they serve. This court openly expresses our appreciation to those good and faithful public servants for the vital function of government that they perform. This case, and our decision herein, are not about those fine citizens. Rather, we were appalled by the attempt of a private corporate entity to utilize the criminal laws of this Commonwealth to collect what is essentially a public and civil debt, and we could not let that manifest abuse of the criminal law and procedure continue unchecked.

In summary, this case illuminates an unfortunately all too common practice in this Commonwealth whereby private tax collecting persons/entities are attempting to take a shortcut to obtain taxes which are claimed to be due and owing to municipal entities. However, this defendant (as are all criminal defendants) is presumed to be innocent of any criminal wrongdoing unless and until proven guilty beyond a reasonable doubt, in a fair, unbiased, and legally proper proceeding. Neither political nor economic expediency, nor economy of scale, nor difficulty in obtaining a favorable civil result, nor convenience for the government or its tax collector, nor any other such premise should ever be allowed to justify a subordination of the law and the rights of our citizens.

Issued at Harrisburg, December 3, 2002.